UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| VALASSIS COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NEWS CORPORATION; NEWS AMERICA MARKETING, a/k/a NEWS AMERICA INC., a/k/a NEWS AMERICA MARKETING GROUP; NEWS AMERICA MARKETING FSI, LLC, a/k/a/ NEWS AMERICA MARKETING FSI, INC.; and NEWS AMERICA MARKETING IN-STORE SERVICES, LLC a/k/a NEWS AMERICA MARKETING IN-STORE SERVICES, INC., <br><br> Defendants. | Case No. 2:13-cv-14654-AJT-PJK <br><br> HON. ARTHUR J. TARNOW |

## **DEFENDANTS' MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

Defendants respectfully move the Court for an order dismissing this action.

Pursuant to E.D. Mich. L.R. 7.1(a), Defendants sought concurrence after a

conference between the parties' attorneys, during which the nature of the instant

motion was explained.  Plaintiff declined to concur in the relief requested.

`

Dated:  December 19, 2013          Respectfully submitted,


                                   BUTZEL LONG
                                   a professional corporation

                                   By: /s/ David F. DuMouchel
                                       **David F. DuMouchel (P25658)**
                                       **Joseph E. Richotte (P70902)**
                                   150 West Jefferson Avenue, Suite 100
                                   Detroit, Michigan 48226
                                   (313) 225-7000
                                   dumouchd@butzel.com
                                   richotte@butzel.com
                                   *Attorneys for Defendants*

                                   **Kenneth A. Gallo (N.Y. Bar No. 4430369)**
                                   **Andrew C. Finch (N.Y. Bar No. 4435913)**
                                   **(application for admission to be submitted)**
                                   **William Michael (N.Y. Bar No. 4296356)**
                                   **(application for admission to be submitted)**
                                   **Jane B. O'Brien (N.Y. Bar No. 4484457)**
                                   PAUL, WEISS, RIFKIND, WHARTON &
                                   GARRISON LLP
                                   2001 K Street, NW
                                   Washington, D.C. 20006-1047
                                   (202) 223-7300
                                   kgallo@paulweiss.com
                                   afinch@paulweiss.com
                                   wmichael@paulweiss.com
                                   jobrien@paulweiss.com
                                   *Co-Counsel for Defendants*

`

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| VALASSIS COMMUNICATIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEWS CORPORATION; NEWS AMERICA MARKETING, a/k/a NEWS AMERICA INC., a/k/a NEWS AMERICA MARKETING GROUP; NEWS AMERICA MARKETING FSI, LLC, a/k/a/ NEWS AMERICA MARKETING FSI, INC.; and NEWS AMERICA MARKETING IN-STORE SERVICES, LLC a/k/a NEWS AMERICA MARKETING IN-STORE SERVICES, INC.,<br><br>Defendants. | Case No. 2:13-cv-14654-AJT-PJK<br><br>HON. ARTHUR J. TARNOW |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF ISSUES PRESENTED........................................... viii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. ix

PRELIMINARY STATEMENT ............................................................1

BACKGROUND ................................................................................4

ARGUMENT ....................................................................................7

I.     ALL CLAIMS ARISING OUT OF PRE-SETTLEMENT
       CONDUCT WERE RELEASED AND SHOULD BE DISMISSED............7

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT
       FAILS TO COMPLY WITH THE COURT'S JUNE 2011 ORDER ..........11

       A.     The Bundling and Tying Claims Should Be Dismissed ....................11

       B.     All Other Claims Also Should Be Dismissed Or, Alternatively,
              Stayed Pending Proceedings Before the Special Masters ..................13

III.   THE ANTITRUST CLAIMS SHOULD BE
       DISMISSED FOR FAILURE TO STATE A CLAIM..................................15

       A.     The Sherman Act Section 2 Claims Should Be
              Dismissed Because Valassis Has Failed to Allege
              Anticompetitive Conduct ..................................................16

              1.     No Anticompetitive Contracts with Retailers or CPGs ............18

              2.     No Predatory Bidding ................................................30

              3.     No Other Anticompetitive Conduct ..........................................34

       B.     Valassis Also Has Failed to Allege Facts Showing
              Specific Intent to Monopolize or a Dangerous
              Probability of Monopolization ..........................................37

              1.     No Specific Intent to Monopolize..............................................37

`

Page

      2.    No "Dangerous Probability" of Success ...................................38

C.    Valassis Has Failed to Plead Antitrust Injury .....................................40

D.    Valassis Has Failed to Allege Facts Sufficient
to Support Its Bundling and Tying Claims .........................................44

      1.    Bundling ......................................................................................45

      2.    Tying ...........................................................................................47

IV.    THE STATE LAW CLAIMS SHOULD BE DISMISSED .........................49

CONCLUSION .................................................................................................49

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*A.G.K. Sarl* v. *A.M. Todd Co.*,
  No. 07-cv-2727, 2008 WL 724607 (E.D. Pa. Mar. 18, 2008) ............................13

*Advo, Inc.* v. *Philadelphia Newspapers*,
  51 F.3d 1191 (3d Cir. 1995) .........................................................................24, 28

*Am. Council of Certified Podiatric Physicians & Surgeons* v. *Am. Bd.*
  *of Podiatric Surgery, Inc.*,
  323 F.3d 366 (6th Cir. 2003) ...............................................................................37

*Arnold* v. *Arnold Corp.—Printed Commc'ns for Bus.*,
  920 F.2d 1269 (6th Cir. 1990) .............................................................................13

*Arthur S. Langenderfer, Inc.* v. *S.E. Johnson Co.*,
  917 F.2d 1413 (6th Cir. 1990) ...........................................................27, 38, 39, 42

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009)......................................................................................15, 34

*Atl. Richfield Co.* v. *USA Petroleum Co.*,
  495 U.S. 328 (1990)....................................................................................*passim*

*B&H Med., L.L.C.* v. *ABP Admin., Inc.*,
  526 F.3d 257 (6th Cir. 2008) ........................................................................14, 20

*Barry Wright Corp.* v. *ITT Grinnell Corp.*,
  724 F.2d 227 (1st Cir. 1983)......................................................................*passim*

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007)...................................................................................*passim*

*Blair Foods, Inc.* v. *Ranchers Cotton Oil*,
  610 F.2d 665 (9th Cir. 1980) ...............................................................................38

*Blue Cross & Blue Shield United of Wis.* v. *Marshfield Clinic*,
  65 F.3d 1406 (7th Cir. 1995) ...............................................................................43

`

**Page(s)**

*Brooke Grp. Ltd.* v. *Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993).................................................................................*passim*

*Bruno* v. *Metro. Transp. Auth.*,
344 F.App'x 634 (2d Cir. 2009) ...............................................................7

*Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977).............................................................................40, 43

*Cargill, Inc.* v. *Monfort of Colorado, Inc.*,
479 U.S. 104 (1986).............................................................................20, 43

*Cascade Health Solutions* v. *PeaceHealth*,
515 F.3d 883 (9th Cir. 2008) ..........................................................14, 45, 46

*CBC Companies, Inc.* v. *Equifax, Inc.*,
561 F.3d 569 (6th Cir. 2009) .....................................................................15

*Compuware Corp.* v. *Int'l Bus. Machines Corp.*,
366 F. Supp. 2d 475 (E.D. Mich. 2005) .....................................................34

*Conwood Co., L.P.* v. *U.S. Tobacco Co.*,
290 F.3d 768 (6th Cir. 2002) .....................................................................36

*Directory Sales Mgmt. Corp.* v. *Ohio Bell Tel. Co.*,
833 F.2d 606 (6th Cir. 1987) .....................................................................32

*Fleer Corp.* v. *Topps Chewing Gum, Inc.*,
658 F.2d 139 (3d Cir. 1981) ......................................................................25

*GMA Cover Corp.* v. *Saab Barracauda LLC*,
No. 10-cv-12060, 2012 WL 642739 (E.D. Mich. Feb. 8, 2012) ...........33, 34, 35

*Hailes* v. *Free*, No. 12-cv-00687, 2012 WL 5988726 (S.D. Ohio Nov.
29, 2012) .................................................................................................43

*Int'l Travel Arrangers* v. *NWA, Inc.*,
991 F.2d 1389 (8th Cir. 1993) ...................................................................32

*Invacare Corp.* v. *Respironics, Inc.*,
No. 04-cv-1580, 2006 WL 3022968 (N.D. Ohio Oct. 23, 2006) .................32,46

*Javitch* v. *First Union Secs., Inc.*,
315 F.3d 619 (6th Cir. 2003) .....................................................................13

iv

`

**Page(s)**

*Jefferson Parish Hosp. Dist. No. 2* v. *Hyde*,
466 U.S. 2 (1984)..............................................................45

*JM Computer Servs., Inc.* v. *Schlumberger Technologier, Inc.*,
No. 95-cv-20349, 1996 WL 241607 (N.D. Cal. May 3, 1996) .........................25

*Little Caesar Enters.* v. *Smith*,
895 F. Supp. 884 (E.D. Mich.1995) ................................................49

*Madison Sq. Garden, L.P.* v. *Nat'l Hockey League*,
No. 07-cv-9455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) .......................10

*Matsushita Elec. Indus. Co., Ltd.* v. *Zenith Radio Corp.*,
475 U.S. 574 (1986)...................................................18, 30, 34, 43

*MCM Partners, Inc.* v. *Andrews-Bartlett & Assocs., Inc.*,
161 F.3d 443 (7th Cir. 1998) ......................................................8

*Melea Ltd.* v. *Quality Models, Ltd.*,
345 F. Supp. 2d 743 (E.D. Mich. 2004) ...........................................35

*Menasha Corp.* v. *News Am. Mktg. In-Store, Inc.*,
354 F.3d 661 (7th Cir. 2004) ..............................................22, 25, 26

*Midwest Auto Auction, Inc.* v. *McNeal*,
No. 11-cv-14562, 2012 WL 3478647 (E.D. Mich. Aug. 14, 2012) .......32, 37, 49

*Morgan* v. *Ponder*,
892 F.2d 1355 (8th Cir. 1989) ...................................................32

*Musson Theatrical, Inc.* v. *Fed. Exp. Corp.*,
89 F.3d 1244 (6th Cir. 1996) ....................................................49

*Neway Anchoelok Int'l, Inc.* v. *Longwood, Inc.*,
107 F. Supp. 2d 810 (W.D. Mich. 1999) ...........................................36

*NicSand, Inc.* v. *3M Co.*,
507 F.3d 442 (6th Cir. 2007) .................................................*passim*

*NYNEX Corp.* v. *Discon, Inc.*,
525 U.S. 128 (1999)..........................................................18, 36

*Ortho Diagnostic Sys.* v. *Abbott Labs., Inc.*,
920 F. Supp. 455 (S.D.N.Y. 1996) ...............................................46

`

**Page(s)**

*Pennwalt Corp.* v. *Zenith Lab., Inc.*,
  472 F. Supp. 413 (E.D. Mich. 1979) ..................................................35

*Prof'l Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993) ..........................................................................35

*Ramallo Bros. Printing, Inc.* v. *El Dia, Inc.*,
  392 F. Supp. 2d 118 (D.P.R. 2005) ..................................................48

*Re/Max Int'l, Inc.* v. *Realty One, Inc.*,
  173 F.3d 995 (6th Cir. 1999) ..........................................................14

*Reynosa* v. *Schultz*,
  282 F. App'x 386 (6th Cir. 2008) ....................................................49

*Sanderson* v. *Culligan Int'l Co.*,
  415 F.3d 620 (7th Cir. 2005) ..........................................................28

*Spectrum Sports* v. *McQuillan*,
  506 U.S. 447 (1993) ...........................................................17, 23, 36, 38

*Sterling Merch., Inc.* v. *Nestle, S.A.*,
  656 F.3d 112 (1st Cir. 2011) ..........................................................39

*Synergetics USA, Inc.* v. *Alcon Labs., Inc.*,
  No. 08-cv-3669, 2009 WL 435299 (S.D.N.Y. 2009) ..................................32, 48

*Taylor Pub. Co.* v. *Jostens, Inc.*,
  216 F.3d 465 (5th Cir. 2000) ..........................................................39

*Times-Picayune Pub. Co.* v. *United States*,
  345 U.S. 594 (1953) ....................................................................37, 38

*Tricom, Inc.* v. *Elec. Data Sys. Corp.*,
  No. 92-cv-76374, 1996 WL 224762 (E.D. Mich. Mar. 6, 1996) ........................48

*United States* v. *Am. Tobacco Co.*,
  221 U.S. 106 (1911) ........................................................................26

*United States* v. *Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ................................................*passim*

*Universal Grading Serv.* v. *eBay, Inc.*,
  No. 09-cv-2755, 2012 WL 70644 (N.D. Cal. Jan. 9, 2012) ..........................49

`

**Page(s)**

*Verizon Commc'ns, Inc.* v. *Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)..................................................................................14

*Vertex Dev. LLC* v. *Fifth Third Bank*,
    No. 308822, 2013 WL 85904 (Mich. Ct. App. Jan. 8, 2013)..............................7

*Virgin Atl. Airways Ltd.* v. *British Airways, PLC*,
    257 F.3d 256 (2d Cir. 2001) ...............................................................39

*Weyerhaeuser Co.* v. *Ross-Simmons Hardwood Lumber Co.*,
    549 U.S. 312 (2007)......................................................................31, 33, 41

## STATUTES

28 U.S.C. § 1367 ...................................................................................49

California Unfair Trade Practices Act. .............................................................7, 47

Cartwright Act.......................................................................................7, 49

Federal Rule of Civil Procedure 8(a) ...........................................................2

Federal Rule of Civil Procedure 12(b)(6) .........................................................*passim*

Sherman Act §§ 1-2 and Clayton Act § 3 ................................................6, 7, 16, 20

## OTHER AUTHORITIES

Areeda & Hovenkamp, Antitrust Law (3d ed. 2008) .........................................38, 39

## STATEMENT OF ISSUES PRESENTED

1.      Whether Valassis's Complaint should be dismissed because all of its claims are barred by the broad and general release and covenant not to sue that Valassis granted to Defendants in connection with the February 2010 settlement of the prior litigation between the parties.

**Defendants answer "yes."**

2.      Whether Valassis's Complaint should be dismissed because it asserts antitrust claims—including allegedly unlawful "bundling" and "tying"—that this Court's June 15, 2011 Order requires to be brought before an expert panel of Special Masters and with respect to which Valassis previously waived its right to a jury trial.

**Defendants answer "yes."**

3.      Whether Valassis's Complaint should be dismissed for failure to state a claim upon which relief can be granted, because it fails to allege sufficient facts to show that Defendants' conduct constitutes an antitrust violation—as opposed to lawful price competition—and offers only "labels and conclusions" and a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).

**Defendants answer "yes."**

`

## __CONTROLLING OR MOST APPROPRIATE AUTHORITY__

1.   Settlement Agreement and Release (Feb. 4, 2010) (Exhibit 2)

2.   Agreement Regarding Antitrust Panel and Assessment of Certain Future Business Practices (Feb. 4, 2010) (Exhibit 3)

3.   Order, *Valassis Commc'ns* v. *News America, Inc.*, No. 06-cv-10240, Dkt. 412 (June 15, 2011) (Exhibit 6)

4.   Federal Rule of Civil Procedure 12(b)(6)

5.   *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007)

6.   *Weyerhaeuser Co.* v. *Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312 (2007)

7.   *Brooke Grp. Ltd.* v. *Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993)

8.   *Atl. Richfield Co.* v. *USA Petroleum Co.*, 495 U.S. 328 (1990)

9.   *Matsushita Elec. Indus. Co., Ltd.* v. *Zenith Radio Corp.*, 475 U.S. 574 (1986)

10.   *NicSand, Inc.* v. *3M Co.*, 507 F.3d 442 (6th Cir. 2007)

11.   *Cascade Health Solutions* v. *PeaceHealth*, 515 F.3d 883 (9th Cir. 2008)

Defendants News Corporation, News America Marketing a/k/a News America Incorporated (n/k/a 21st Century Fox), News America Marketing FSI L.L.C. and News America Marketing In-Store Services, L.L.C. (together, "NAM") respectfully submit that Plaintiff's complaint (Dkt. No. 1, the "Complaint") should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This is not the first time these parties have been before the Court.  Nearly four years ago, this Court presided over a sprawling antitrust and unfair competition litigation that had begun in 2006 and had encompassed three different federal and state court actions filed by Valassis.  On February 5, 2010, the Court steered that litigation to a conclusion, by entering an order dismissing with prejudice all claims that Valassis had asserted or could have asserted against NAM in the prior case, accompanied by a comprehensive release that covered the parties' long and disputed history.  With the consent of both parties, and the assistance of a panel of antitrust experts appointed by the Court as Special Masters, the Court also devised a means for the parties to resolve any future disputes efficiently and in a manner designed to preserve the finality of the settlement and not unduly burden the Court or the parties themselves.  Central to that dispute resolution process were the parties' mutual agreement to waive their rights to a jury trial with respect to any future claims concerning "bundling" or "tying" under the antitrust laws, and

1

`

this Court's June 2011 Order that such claims were to be brought before the Special Masters.

By filing this new lawsuit, Valassis has trampled upon the framework established by the Court, and acted in violation of its obligations under the parties' agreements and the Court's orders—including the broad and general release and covenant not to sue that Valassis granted to NAM as part of the settlement agreement, Valassis's express waiver of the right to a jury trial on future bundling or tying claims, and the Order directing that all disputes over such claims be brought by way of motion and determined by the antitrust Special Masters.

Valassis's "new" claims—which assert antitrust and unfair competition violations, *including bundling and tying*, that are virtually identical to those asserted in the prior litigation—are a transparent attempt to re-litigate old, and settled, disputes. All claims in the new Complaint should be dismissed, because they all are precluded by the parties' 2010 settlement agreement and release and by this Court's June 2011 Order. Because Valassis is unable to allege any post-release facts that state a cognizable claim for relief under the antitrust laws, the Complaint also fails to meet the pleading standards of Rule 8(a) and *Twombly*.

Valassis has tried to circumvent the release by making allegations about conduct and events without saying when they occurred. For example, in an effort to establish that NAM's contracts with retailers have an anticompetitive purpose

`

and effect, Valassis quotes remarks made by a NAM employee, Marty Garofalo. (¶¶ 127–128.)  Valassis fails to inform the Court, however, that the statements quoted were made in 2004 and were presented to the jury in the trial of Valassis's state court action against NAM in 2009.  Valassis's attempt to manufacture new antitrust claims out of conduct that was previously litigated and settled is a clear breach of its obligations under the 2010 release and covenant not to sue.  Valassis is recycling for a reason—it cannot plead a factual basis to assert any of the new claims it levels against NAM.

Stripped of allegations about non-actionable, released conduct that pre-dates the settlement agreement, all that Valassis's Complaint offers are "labels and conclusions" and a "formulaic recitation of the elements" of various federal and state law causes of action.  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007). The Complaint is filled with antitrust buzzwords, like "exclusive," "predatory," and "anticompetitive."  But, for all its length, it is devoid of any specific facts about the contracts, pricing, and other conduct to which those catchphrases purportedly apply.  That, the Supreme Court has held, "will not do."  *Id.*

While there is no need to speculate about Valassis's motives for filing a new antitrust case against NAM, one thing that is clear is that this action is not brought to protect consumers or to strengthen the market.  Instead, it is brought to promote the sale of Valassis to the highest bidder.  Recently, Valassis approached NAM—

3

`

twice—to solicit NAM's interest in buying its in-store promotions business, so that NAM—which according to Valassis already has monopoly power—could combine that business with its own. NAM declined the invitations and Valassis then put itself up for auction to the highest bidder. And, in the midst of that auction, it filed this lawsuit—apparently in an effort to make itself more attractive to potential suitors by adding a new asset to the mix.[1]

Because Valassis has failed to plead facts capable of stating a claim for relief that is plausible—and not precluded by the 2010 settlement agreement and release, or by this Court's June 2011 Order directing future disputes between the parties to be brought before the Special Masters—the Complaint should be dismissed.

## **BACKGROUND**

NAM's business is to provide manufacturers of consumer packaged goods ("CPGs") certain forms of advertising media with which to market their products. These include free-standing insert ("FSI") coupons, which are coupon booklets inserted into local or national newspapers, and in-store promotion ("ISP") services, such as floor and shelf advertising, at-shelf coupon dispensers and shopping cart

---

[1]   On December 18, 2013, Valassis announced that it will be acquired for $1.84 billion by Harland Clarke Holdings Corp. According to the press release announcing the transaction, the combined company "will create a leader in the transaction services, media delivery services, consumer and business direct and education solutions industries," and "will have deep and tenured customer relationships with the largest financial, consumer products and retail institutions worldwide." (Ex. 7, Dec. 18, 2013 Harland Clarke-Valassis Press Release.)

`

advertisements.  ISPs are used in supermarkets, drug stores and other retail outlets throughout the United States.  Valassis also sells FSI coupons and ISPs to CPGs— among other forms of advertising media—that compete with NAM's products.  In 2006, Valassis filed a lawsuit against NAM, alleging that NAM's pricing of FSI coupons and ISPs violated federal and state antitrust and unfair competition laws.

Following a lengthy litigation, Valassis and NAM reached a settlement agreement, in February 2010.  Under that agreement, Valassis agreed to release NAM "from any and all manner of actions and causes of action . . . relating to any claim, allegation or cause of action that was or could have been asserted" against NAM, "arising from or based on any claims, allegations, actions, inaction, conduct or facts of any kind existing up to the date of" the settlement agreement.  (Ex. 2, Settlement Agreement and Release (the "Settlement Agreement"), at 4–5.)

Valassis and NAM also agreed that a panel of antitrust experts would be appointed to "assess the Parties' future business practices related to bundling and tying under the antitrust laws."  (*See* Ex. 3, Agreement Regarding Antitrust Panel and Assessment of Certain Future Business Practices (the "Agreement"), at 1.) The parties further agreed that the panel would provide the parties' "***exclusive*** remedy in the event of violations of allegedly unlawful bundling and tying."  (*Id.* (emphasis added).)  Pursuant to this Agreement, a panel of Special Masters was appointed, and it issued a Report and Recommendation proposing standards to

`

govern future bundling and tying claims.  (Ex. 5, Report and Recommendation, *Valassis Commc'ns, Inc.* v. *News Am. Inc.*, No. 06-cv-10240, Dkt. No. 403.)

On June 15, 2011, this Court entered an Order adopting the Report and Recommendation, which governs the parties' bundling and tying practices for five years from execution of the Settlement Agreement (*i.e.*, through February 4, 2015). (Ex. 6, Order, *Valassis Commc'ns* v. *News Am., Inc.*, No. 06-cv-10240, Dkt. No. 412 (the "Order"), at A-3.)  The Order sets out specific legal standards for evaluating what constitutes prohibited bundling and tying.  (*Id.* at A-3 to A-6.)

On November 8, 2013, Valassis filed this action.  The Complaint accuses NAM of continuing to engage in the same conduct that was the subject of the previous litigation.  The Complaint sets forth five theories of antitrust liability: (1) that NAM's agreements with retailers and CPGs constitute unlawful exclusive dealing, in violation of Sherman Act § 1 and Clayton Act § 3; (2) that the same agreements give rise to claims for unlawful monopolization of the alleged market for ISP products and for attempted monopolization of the alleged market for FSI products, under Sherman Act § 2; (3) that NAM pays retailers predatorily high cash "guarantees" in exchange for ISP access, also in violation of Sherman Act § 2; (4) that NAM engages in unlawful bundling and tying of its FSI and ISP products, as part of an alleged attempt to gain a monopoly over FSI products, in violation of Sherman Act §§ 1 and 2, Clayton Act § 3, and this Court's June 2011

6

`

Order; and (5) that NAM "improperly" has threatened to sue Valassis and engaged in other "unfair" conduct, in violation of Sherman Act § 2.[2]

## ARGUMENT

## I.   ALL CLAIMS ARISING OUT OF PRE-SETTLEMENT CONDUCT WERE RELEASED AND SHOULD BE DISMISSED

In connection with the settlement of the prior action, Valassis broadly released and covenanted not to sue NAM with respect to "any claim, allegation or cause of action that was or could have been asserted" in the prior litigation "arising from or based on ***any claims, allegations, actions, inaction, conduct or facts of any kind existing up to the date of this Agreement***."  (Settlement Agreement ¶ 6 (emphasis added).)  Based on the plain language of the Settlement Agreement, Valassis is barred from relying on conduct or facts that occurred prior to February 4, 2010 to support its new Complaint.  *See, e.g.*, *Vertex Dev. LLC* v. *Fifth Third Bank*, No. 308822, 2013 WL 85904, at *3–4 (Mich. Ct. App. Jan. 8, 2013) (enforcing settlement agreement and dismissing claims where agreement released all claims arising from acts or circumstances up to the date of the agreement); *see also Bruno* v. *Metro. Transp. Auth.*, 344 F. App'x 634, 636 (2d Cir. 2009)

---

[2]   Valassis alleges that these violations of federal antitrust law also violate Michigan's Antitrust Reform Act, California's Cartwright Act and the Michigan law of unfair competition.  Valassis further alleges that NAM's bundled pricing violates the California Unfair Trade Practices Act.  Finally, Valassis claims that, through the same alleged conduct, NAM tortiously interfered with Valassis's contracts and business relations or expectancies with retailers, in violation of Michigan common law.

`

(affirming dismissal of claim under Rule 12(b)(6) because it was barred by a general release in a previous lawsuit); *MCM Partners, Inc.* v. *Andrews-Bartlett & Assocs., Inc.*, 161 F.3d 443, 448–49 (7th Cir. 1998) (affirming summary judgment for defendant because claims based on pre-release conduct were barred and plaintiff failed to present evidence of post-release violations).[3]

Yet, Valassis's Complaint relies on either released, pre-settlement conduct or facts, or on generalized allegations of NAM's "unethical" or "anticompetitive" conduct without any context from which to determine whether the conduct pre- or post-dates the settlement.  For example, Valassis improperly purports to assert antitrust claims against NAM based on the following, pre-settlement facts:

- Allegedly long-term contracts entered into with retailers *prior* to the settlement (¶ 117; Ex. 1, Trial Tr., *Valassis Commc'ns* v. *News Am. Inc.*, No. 07-cv-706645 (Mich. Cir. Ct.) ("Trial Tr."), July 7, 2009, at 116:19–17:16));

- Statements made by a NAM employee, Marty Garofalo, **_in 2004_** that were the subject of the prior litigation between NAM and Valassis (¶¶ 127–128; Ex. 1, Trial Tr., May 29, 2009, at 52:18–55:15; *id.*, July 7, 2009, at 142:14–44:19);

- Alleged "unethical, unfair, and anticompetitive conduct" at issue in litigations brought by other competitors Floorgraphics, Inc. and Insignia Systems, Inc., both of which were filed in 2004 and therefore involved conduct pre-dating the settlement by several years (¶¶ 42–44); and

---

[3]   Here, the released claims include any claims relating to contracts, conduct and practices  that were in place as of the date of the settlement agreement, even if they continued after that date.  *See MCM*, 161 F.3d at 448; *see also Madison Sq. Garden, L.P.* v. *Nat'l Hockey League*, No. 07-cv-8455, 2008 WL 4547518, at *6 (S.D.N.Y. Oct. 10, 2008).

`

- Testimony from the prior litigation of NAM's Vice President of News Operations, Thomas Leprine, *__from 2009__*. (¶¶ 222–225; Ex. 1, Trial Tr., May 29, 2009, at 78:10–13)).

Valassis also makes vague and conclusory assertions about NAM's "unfair" conduct, without specifying when that conduct occurred. For example:

- NAM offers "predatory and economically unjustified cash payments or 'guarantees' to certain retailers. . . in order to prevent the retailers from awarding input contracts to Valassis." (¶ 107);

- NAM "forces" retailers and CPGs to "accept contracts that make it difficult for the retailer to terminate the contract" other than "for cause" and with a period in which NAM may cure any alleged breach. (¶¶ 118–120 (retailers); ¶¶ 157–160 (CPGs));

- NAM imposes a "financial penalty" if a CPG "does not purchase the amount of ISPs set forth in the contract with [NAM]." (¶ 184);

- NAM "penalizes CPGs with higher ISP pricing if the CPG awards all or part of its FSI business to Valassis." (¶ 188); and

- NAM "coerces certain CPGs to purchase [NAM]'s FSIs in order for the CPG to gain access to [NAM]'s national and regional retailer network in the ISP market." (¶ 237.)

In addition, Valassis relies on information it supposedly has received from unidentified retailers or CPGs, at unidentified times. For instance, Valassis alleges that retailers have "informed Valassis" that NAM's guarantees are "economically unjustified" and that NAM "is throwing money at the retailer in order to keep the stores and thereby prevent Valassis from obtaining a contract." (¶¶ 108–111.) Valassis alleges that CPGs have told Valassis "it is not competitive . . . because of [NAM]'s subsidized bundled pricing." (¶ 258; *see also* ¶¶ 259–261.)

9

`

As discussed below in Section III, Valassis's allegations about NAM's conduct are so vague and conclusory that merely adding an assertion that such conduct post-dates the release would not render them sufficient to state a claim on which relief could be granted.  But, Valassis's failure to disclose that certain allegations in the Complaint are based on witness testimony and documents that were the subject of the prior litigation bespeaks a deliberate effort to circumvent the release.  As to the remaining allegations, the omission of information necessary to determine when the alleged conduct occurred indicates that Valassis knows that these allegations also pre-date the 2010 settlement and release, or at least that it cannot point to any actionable, post-settlement facts to support them.

Insofar as Valassis's claims are based on facts or conduct that occurred prior to the parties' 2010 settlement, such claims are barred by the release and should be dismissed with prejudice.  In addition, any allegations relating to pre-settlement conduct should be stricken from the Complaint, pursuant to the release.  To the extent that Valassis purports to assert any claims based exclusively on new *post*-settlement conduct—and if such claims are not dismissed with prejudice pursuant to Rule 12(b)(6), for the reasons discussed below—they should be dismissed with instructions to plead specific facts from which NAM and the Court may distinguish between conduct that pre-dates the settlement and has been released, and new conduct that occurred after February 4, 2010.

10

`

## II.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO COMPLY WITH THE COURT'S JUNE 2011 ORDER

In connection with the settlement of the prior litigation, Valassis and NAM entered into an Agreement which, as discussed, provides for a three-member expert antitrust panel to assess claims relating to bundling and tying under the antitrust laws.  (Agreement at 1.)  The Agreement further provides that "[e]ach of the Plaintiff and Defendants hereby *waive their right to a trial by jury* in any proceedings relating to such business practices."  (*Id.* (emphasis added).)  With respect to any bundling and tying claims, the parties' "exclusive remedy" is to be "determined by the expert panel and ultimately by Judge Tarnow."  (*Id.*)

On June 15, 2011, the Court entered the Order, which prohibits NAM and Valassis from engaging in bundling or tying practices that violate the antitrust laws, under the standards set forth therein.  (Order at A-4 to A-6.)  If either party believes that the other has violated any provision of the Order, "it may, but is not required to, seek relief from the District Court by way of motion for further injunctive relief, contempt, or otherwise."  (*Id.* at A-2.)

### A.   The Bundling and Tying Claims Should Be Dismissed

The Complaint asserts claims for bundling (Count VII) and tying (Count VIII) in violation of the antitrust laws.  (¶¶ 406, 413, 426.)  As Valassis concedes, these claims fall squarely within the terms of the Court's Order.  (*See* ¶ 418.)  Yet,

11

`

in clear contradiction of that Order, Valassis purports to demand a trial by jury on all of its claims, including bundling and tying.  (*Id.* p. 80.)

To the extent Valassis can support a claim that NAM violated the antitrust laws through bundling or tying, it is permitted to file a motion seeking relief pursuant to the terms of the Agreement and Order.  (Order at A-2; Agreement at 1.) It is <u>not</u> permitted to seek a jury trial on such claims.  Valassis waived its right to a jury trial, expressly, when it entered into the Agreement.  (Agreement at 1.)

Valassis states that its pleading of the bundling and tying claims in the Complaint is done "in the alternative to the relief allowed under the Order." (¶ 420.)  But no such alternative exists.  Rather, Valassis's "exclusive remedy" for any bundling or tying violation is to be determined under the Order by the Special Masters and, ultimately, by the Court.  (Order at A-2; Agreement at 1.)

In an effort to avoid dismissal, Valassis also contends that its bundling and tying claims are pleaded in the Complaint "because News Corporation was not a named defendant in *Valassis I.*"  (¶ 421.)  But, the Complaint contains no allegations regarding the conduct of News Corporation that are in any way distinct from the allegations about the conduct of its subsidiaries, and News Corporation is not even a proper party to this lawsuit.

In any event, the fact that the parent company was not a named defendant in the prior Valassis litigation is irrelevant.  Valassis's agreement to waive its right to

`

a jury trial for bundling and tying claims was not limited to proceedings against the subsidiary.  (Agreement at 1.)  By its terms, the Agreement applies to "*any* proceedings by the panel or Court relating to such future business practices."  (*Id.* (emphasis added).)  Furthermore, under the Settlement Agreement, Valassis agreed to a release of the defendants to the prior action *and* their related or affiliated companies, including their corporate parent—News Corporation.  (Settlement Agreement ¶ 6.)  In an analogous context, the Sixth Circuit and other courts have held that plaintiffs cannot avoid the effect of a contractual arbitration clause merely by suing an agent or parent company that is not a signatory to the contract.  *See, e.g.*, *Javitch* v. *First Union Secs., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003); *Arnold* v. *Arnold Corp.—Printed Commc'ns for Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990); *A.G.K. Sarl* v. *A.M. Todd Co.*, No. 07-cv-2727, 2008 WL 724607, at *10 (E.D. Pa. Mar. 18, 2008).  Similarly, here, Valassis may not accomplish an end run around its waiver of the right to a jury trial on bundling and tying claims by naming the corporate parent, News Corporation, as a defendant.

### B.   All Other Claims Also Should Be Dismissed Or, Alternatively, Stayed Pending Proceedings Before the Special Masters

Valassis's other antitrust claims are all either based on its allegations of bundling and tying or have substantive elements in common with those claims. For example, Valassis's claims of "exclusive dealing" are based on exactly the same contracts and pricing that Valassis says amount to unlawful bundling and

13

`

tying.  It would be wasteful and inefficient (if not impossible) for the Court to try to assess the lawfulness of those contracts under an exclusive dealing standard without also determining whether they do or do not constitute unlawful bundling or tying arrangements.  Likewise, to determine whether NAM's contracts violate the bundling and tying standards set forth in the June 2011 Order, it would be necessary to consider other features of those contracts, including ones that Valassis criticizes as exclusionary—such as their length and "staggered" expiration dates. All of the antitrust claims, therefore, should be dismissed from this action.

Valassis cannot establish a claim of unlawful bundling or tying under the Order without, first, defining a relevant product market and, second, establishing that NAM has "economic power" in that market.  (Order ¶¶ 2, 4.)  *See Cascade Health Solutions* v. *PeaceHealth*, 515 F.3d 883, 903 (9th Cir. 2008); *United States* v. *Microsoft Corp.*, 253 F.3d 34, 59–60, 85 (D.C. Cir. 2001); *see also Re/Max Int'l, Inc.* v. *Realty One, Inc.*, 173 F.3d 995, 1016–17 (6th Cir. 1999).  The same prerequisites apply to all of the antitrust claims asserted in Valassis's Complaint. *See Verizon Commc'ns, Inc.* v. *Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *B&H Med., L.L.C.* v. *ABP Admin., Inc.*, 526 F.3d 257, 266 (6th Cir. 2008).  Furthermore, Valassis's claims of monopolization and attempted monopolization are based, in part, on the assertion that NAM's alleged bundling and tying practices constitute anticompetitive conduct.

14

`

Thus, to the extent that Valassis is able to present claims for bundling and tying in a proper motion for relief under the June 2011 Order, the Special Masters will be required—at a minimum—to determine issues of market definition and NAM's alleged power within the relevant market or markets, to determine whether NAM has violated the Order.  In that instance, the Special Masters also should review Valassis's other antitrust claims.

Accordingly, NAM requests that all of Valassis's antitrust claims be dismissed.  In the alternative, all proceedings regarding the other antitrust claims should be stayed pending determination of any bundling and tying claims that Valassis may present to the Special Masters.  This will conserve judicial resources and avoid the risk of inconsistent adjudication that would arise if the bundling and tying claims were litigated on a separate, parallel track from the other claims.  Further, because Valassis's state law claims are based on the same conduct as its federal antitrust claims, those claims also should be dismissed or stayed.

## III.  THE ANTITRUST CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss, Valassis must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see CBC Companies, Inc.* v. *Equifax, Inc.*, 561 F.3d 569, 571 (6th Cir. 2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

15

`

Likewise, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has emphasized that the costs associated with antitrust discovery are "potentially enormous," and thus it is appropriate for district courts "to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558, 559 (quotation marks omitted). As a result, "the federal courts have been reasonably aggressive in weeding out meritless antitrust claims at the pleading stage." *NicSand, Inc.* v. *3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (quotation marks omitted).

Here, the need for factual specificity is heightened by the 2010 release. Because Valassis cannot rely on allegations of *pre*-release to support its claims, it must identify new *post*-release conduct that states a plausible claim for relief under the antitrust laws. Valassis has failed to carry that burden. Its Complaint offers labels, conclusions, and naked assertions, but no actionable post-release facts.

### A.   The Sherman Act Section 2 Claims Should Be Dismissed Because Valassis Has Failed to Allege Anticompetitive Conduct

Under Section 2 of the Sherman Act, "possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive

`

*conduct*." *Trinko*, 540 U.S. at 407.  To constitute anticompetitive conduct under

Section 2, the conduct alleged "must harm the competitive *process* and thereby

harm consumers.  In contrast, harm to one or more *competitors* will not suffice."

*Microsoft*, 253 F.3d at 58; *see Spectrum Sports, Inc.* v. *McQuillan*, 506 U.S. 447,

458 (1993) ("The law directs itself not against conduct which is competitive, even

severely so, but against conduct which unfairly tends to destroy competition

itself.").  None of the conduct that Valassis complains about is anticompetitive, as

a matter of law:

First, Valassis accuses NAM of entering into "long-term, exclusive

contracts" with retailers and CPGs.  (¶¶ 116–25.)  Yet, Valassis has failed to plead

facts showing that such agreements caused any harm to competition.  At most,

Valassis has alleged that NAM's contracts with retailers and CPGs caused Valassis

to lose business.  That is not enough.  *See Microsoft*, 253 F.3d at 58.

Second, Valassis claims that NAM engaged in predatory bidding, by

offering retailers cash payments or guarantees for aisle space that were so high

they resulted in NAM's costs exceeding its revenues.  (¶¶ 106–15, 293.)  But, that

claim is utterly implausible.  According to the Complaint, NAM has been offering

retailers "predatory guarantees"—and thus losing money on its sales of ISPs—

since "[s]hortly after Valassis entered the ISP market," over ***four years*** ago.

(¶¶ 10, 107.)  The Complaint contains no facts to suggest how or when NAM

17

`

might recoup those losses.  Such a claim "simply makes no economic sense."
*Matsushita Elec. Indus. Co., Ltd.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

<u>Finally</u>, Valassis complains that NAM engaged in "unfair" or "unethical"
conduct, such as threatening to sue Valassis, "removing Valassis' ISP tactics from
stores under contract with Valassis" and "misrepresenting" its own "retailer
network."  (¶¶ 16, 341.)  Such alleged conduct does not state a Sherman Act claim.
*See NYNEX Corp.* v. *Discon, Inc.*, 525 U.S. 128, 137 (1999).

## 1.   <u>No Anticompetitive Contracts with Retailers or CPGs</u>

Valassis claims that NAM's "exclusive" agreements with retailers harm
competition in the alleged ISP market, and that its agreements with CPGs harm
competition in the alleged ISP and FSI markets.  But the Complaint contains no
facts to show that such agreements are exclusionary or anticompetitive.

Valassis's fundamental complaint is that NAM engages in *price
competition*—offering attractive pricing to retailers and CPGs in exchange for their
commitment to sell to, or buy from, NAM for some period of time.  That is not
anticompetitive conduct.  *See, e.g.*, *Atl. Richfield Co.* v. *USA Petroleum Co.*, 495
U.S. 328, 340–41 (1990) ("When prices are not predatory, any losses flowing from
them cannot be said to stem from an *anticompetitive* aspect of the defendant's
conduct." (footnote, citations, and quotation marks omitted)).

`

Valassis's allegations about NAM's contracts are, in all relevant respects, identical to the allegations that the Sixth Circuit rejected as insufficient to support a competitor's Sherman Act claim in *NicSand, Inc.* v. *3M Co.*, 507 F.3d 442 (6th Cir. 2007). In *NicSand*, the relevant market was composed of two competitors and six large retail customers. *Id.* The plaintiff, NicSand, alleged that the defendant, 3M, had entered into long-term, "exclusive" agreements with five of the six large retailers, which it secured through upfront cash payments. *Id.* at 448–49. NicSand, left with only one large retail customer, eventually left the market and filed for bankruptcy. *Id.*

The Court held that NicSand's complaint was properly dismissed under Rule 12(b)(6), because NicSand had failed to plead any loss stemming "'from a competition-*reducing* aspect or effect of the defendant's behavior.'" *Id.* at 449 (quoting *Atl. Richfield*, 495 U.S. at 344). <u>First</u>, the Court rejected NicSand's argument that the cash payments 3M offered to retailers were somehow improper or exclusionary. Such payments, the Court held, were nothing more than procompetitive price competition: "Rather than upsetting the competition-enhancing goals of the antitrust laws, the payments furthered them." *Id.* at 452.

<u>Second</u>, the Court concluded that the multi-year terms and exclusivity provisions likewise reflected legitimate competition. From the retailer's perspective, "[c]ommitting to a multi-year agreement . . . is no different from

19

`

buying in bulk." *Id.* at 453. Retailers were found to favor exclusive agreements for precisely that reason. And "[i]f *retailers* have made supplier exclusivity a barrier to entry," the Court held, "one cannot bring an antitrust claim against a *supplier* for acquiescing to that requirement." *Id.* at 454.

Valassis's contract claims fail for the same reasons NicSand's did. At bottom, all Valassis has alleged is that NAM won contracts with retailers and CPGs by aggressively competing on price. That kind of competitive conduct does not state an antitrust claim—even if it causes a competitor, like Valassis, to lose sales. *See, e.g.*, *Cargill, Inc.* v. *Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986) (the antitrust laws do not "protect competitors from the loss of profits due to . . . price competition").[4]

### (a)   Agreements with Retailers

Valassis contends that NAM "requires retailers to agree to long-term contracts with overly broad exclusivity provisions" that prohibit them from doing business with Valassis and other ISP providers. (¶ 116.) Yet, the Complaint fails to plead *any facts* to show that NAM's agreements actually exclude competition. <u>First</u>, Valassis has failed to plead any facts establishing that NAM has the power to

---

[4]   For the same reasons, Valassis's claims of exclusive dealing under Sherman Act § 1 and Clayton Act § 3—which are based on the same agreements as its Sherman Act § 2 claims—must be dismissed. Valassis has failed to plead contracts that foreclose competition at all in a relevant market, much less ones that substantially foreclose competition. *See B&H Med.*, 526 F.3d at 266.

`

"require" or "force" retailers to enter into contracts that foreclose competition.

Second, none of the contractual terms that Valassis complains about—including their length, termination and renewal provisions, "staggered" expiration dates, and "right of first refusal" provisions—foreclose competition. Thus, while Valassis calls NAM's contracts "exclusive," it has failed to plead facts showing that the contracts had any actual exclusionary effect on competition.

### (i) NAM Does Not "Force" Retailers to Sign Exclusive Contracts

Valassis asks the Court to accept that NAM "forces retailers to accept contracts" that foreclose competition and thus are contrary to their own economic interests. (¶ 118.)  But, Valassis has failed to plead any facts to make that allegation plausible.  To the contrary, Valassis's allegations show that NAM's retailer agreements have not prevented Valassis from entering and remaining in the alleged ISP market for the past four years, or from winning its own "exclusive" contracts with several large retailers, including SuperValu, Winn Dixie, Super Save, Rite Aid, and Family Dollar Stores.  (¶¶ 10, 199, 202.)

Further, there is nothing in the Complaint to suggest that NAM "could likely bully" retailers "into accepting a contract that might foreclose new competition." *Barry Wright Corp.* v. *ITT Grinnell Corp.*, 724 F.2d 227, 238 (1st Cir. 1983).  The retailers with whom NAM is alleged to have entered into anticompetitive agreements are "major national retail grocery store chains."  (¶¶ 97, 100.)  Since no

21

`

ISP competitor can effectively compete without access to a "critical mass" of such major national retailers (¶ 97), such retailers wield enormous leverage over ISP competitors such as NAM and Valassis.  And, of course, they have every interest in promoting competition for the input—access to store aisles—they offer.  *See Barry Wright*, 724 F.2d at 238; *NicSand*, 507 F.3d at 453.

As the Seventh Circuit observed in rejecting another competitor's complaint that NAM entered into exclusive contracts with retailers for at-shelf coupons, there is no reason why retailers would sign "exclusive contracts that entrench [NAM] as a monopolist that then can apply the squeeze."  *Menasha Corp.* v. *News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004).  The more "natural inference is that the complained-of practice promotes rather than undermines competition, for what helps consumers often harms other producers," such as Valassis.  *Id.*

Valassis contends that retailers enter into contracts with NAM because NAM offers upfront "guarantees," which Valassis says are "economically unjustified" and "predatory."  (¶ 107.)  But, it has pled no facts to state a plausible claim of predatory "overpayment."  (*See infra* at 30.)  Among other things, Valassis has failed to allege facts showing that the payments NAM allegedly offered to retailers resulted in prices that were below NAM's average variable cost for the relevant product.  *Brooke Grp. Ltd.* v. *Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222–23 (1993).  Without such facts, the supposedly anticompetitive

`

payments amount to nothing more than <u>price competition</u>, which the antitrust laws seek to promote, not condemn.  *See NicSand*, 507 F.3d at 451–52.

> ### (ii)   The Challenged Contract Terms Are Pro-Competitive

Valassis also complains about certain other aspects of NAM's agreements with retailers—namely, their multi-year terms, "staggered" expiration dates, termination and renewal provisions, and "right of first refusal" provisions.  None of these terms supports an inference that NAM's agreements have a tendency to "destroy competition itself."  *Spectrum Sports*, 506 U.S. at 458.

**<u>The multi-year terms.</u>**  The Complaint's labeling of NAM's agreements with retailers as "long-term" is too vague and conclusory to support any meaningful inference about the length of such agreements.  Valassis says that NAM "contracted with one retailer for ten years and another for seven years." (¶ 117.)  But it has failed to plead the most basic information about those contracts, including who the retailers were and when the contracts were signed.  *See JM Computer Servs., Inc.* v. *Schlumberger Technologier, Inc.*, No. 95-cv-20349, 1996 WL 241607, at *4 (N.D. Cal. May 3, 1996) (dismissing exclusive dealing claim where plaintiff "failed to identify an agreement with a specific person or entity").

That missing information is critical.  There are only two retailers with which NAM has ever entered into a seven-year or ten-year contract.  As Valassis must

`

know, *both* of those contracts pre-date the 2010 release and, thus, cannot give rise to any claim in this action.

The Complaint also contains no facts to suggest that the terms of the two pre-release contracts referenced are in any way representative of NAM's current retailer contracts.  As a result, the Court cannot determine whether NAM's contracts are even *potentially* anticompetitive.  *See, e.g.*, *Advo, Inc.* v. *Phila. Newspapers*, 51 F.3d 1191, 1204 (3d Cir. 1995) (two-year contracts deemed reasonable and not anticompetitive); *Barry Wright*, 724 F.2d at 237 (same).

Further, even if Valassis had pled facts sufficient to show that many or most of NAM's retailer agreements involved multi-year terms, that would not suggest that the agreements foreclose competition.  To the contrary, the only fair inference to be drawn from the Complaint is that retailers agree to longer-term contracts in exchange for higher upfront payments (*i.e.*, price discounts) or guarantees.

As the Sixth Circuit observed in *NicSand* (where the agreements at issue lasted for 3–5 years), such agreements do not foreclose competition, especially where—as here—the plaintiff "could have competed for the exact same multi-year agreements with its customers."  507 F.3d at 453.  As in *NicSand*, "the multi-year nature of the agreements makes the accompanying advances less troublesome, not more so."  *Id.*  A multi-year term provides more time for a supplier to recoup the investment of an upfront payment or "guarantee" made to a retailer, and thus

24

`

makes it easier—not harder—for suppliers like Valassis to compete for the retailers' business. *See id.*

**The "staggered" expiration dates.** Valassis claims that NAM "intentionally staggers the expiration dates of its retailer contracts," and that this amounts to a "scheme to block its competitors from contracting with retailers." (¶ 126.) That claim is both unsupported and implausible.

As evidence of NAM's alleged "scheme," Valassis quotes statements that were made by a NAM employee, Marty Garofalo. (¶¶ 127–128.) However, Valassis fails to mention that the statements quoted were made in ***2004***.[5] That Valassis has to reach back to statements made nearly a decade ago, long before the parties' settlement agreement and release, underscores the lack of factual support for its present claims.

Moreover, despite Valassis's pejorative "labels and conclusions," the Complaint alleges no facts to suggest that the staggering of expiration dates actually harms competition. Considering a virtually identical allegation, the Seventh Circuit observed: "One might think that staggered expiration dates make entry <u>easier</u>," since competitors "can sign up chains as their exclusives expire, without having to enroll the entire retail industry at one go." *Menasha*, 354 F.3d at 663 (emphasis added); *see also Fleer Corp.* v. *Topps Chewing Gum, Inc.*, 658 F.2d

---

[5]   (*See* Trial Tr., May 29, 2009, at 52:18-55:15; *id.*, July 7, 2009, at 142:14-44:19.)

`

139, 149 (3d Cir. 1981) (rejecting claim that defendant's practice of obtaining long-term contracts with staggered expiration dates was anticompetitive).

Here, according to Valassis's own allegations, NAM's "staggering" of its contracts leaves fully one-third of all retailers' contracts up for bid by competitors in any given year. (¶ 126.) Valassis has alleged no facts to suggest that this is somehow not enough competitive opportunity.[6] The fact that Valassis might prefer "to sign up the *whole* retail industry at one time" does not give rise to an antitrust claim. *Menasha*, 354 F.3d at 663.

**The termination and renewal provisions.** Valassis takes issue with some of NAM's alleged agreements because they can be terminated only "for cause," and they provide NAM with 60–120 days to cure a material breach. (¶¶ 118–21.) It also alleges that some retailer agreements contain "automatic" renewal provisions, and provide for a 30- or 60-day period in which NAM may remove its ISPs from the retailers' stores after a contract terminates. (¶¶ 124–25.)

There is no basis for the Court to presume that such standard contract terms are anticompetitive. *United States* v. *Am. Tobacco Co.*, 221 U.S. 106, 179 (1911) (antitrust law does not "forbid or restrain the power to make normal and usual

---

[6]   Valassis asserts that staggering "insures that a competitor will not be able to build a sufficiently large network of retailers to be a viable competitor." (¶ 129.) But it fails to allege facts showing how large of a network would be "sufficiently large" or that Valassis—which has been a competitor in the alleged ISP market since 2009—is not "viable."

`

contracts to further trade"). The Complaint is devoid of facts to support an inference that such terms have any anticompetitive effect—particularly where NAM is contracting with sophisticated, "major national retail grocery store chains." (¶¶ 97, 100.) *Barry Wright*, 724 F.2d at 238–39 (anticompetitive effects from noncancellation clauses "too remote, too speculative," where purchaser was large and sophisticated). Indeed, the Complaint provides no basis to assume that the challenged provisions are anything other than negotiated terms, to which retailers agree because it is in their interest to do so. That such provisions might disfavor Valassis as a competitor does not make them exclusionary. *See Arthur S. Langenderfer, Inc.* v. *S.E. Johnson Co.*, 917 F.2d 1413, 1422–23 (6th Cir. 1990); *Microsoft*, 253 F.3d at 58.

**The right-of-first refusal provisions.** Valassis also claims that NAM's agreements with retailers foreclose competition by providing NAM with a "right of first refusal" to supply newly-developed in-store products. (¶¶ 14(b)–(c), 131–150.) Valassis makes the bare assertion that such clauses "result in higher overall prices" because they discourage competitors from innovating. (¶ 150.) But the Complaint contains <u>no facts</u> to support that assertion.

Valassis additionally claims that NAM has misused its contractual rights of first refusal by introducing products that infringe on Valassis's trademarks and cause "confusion in the marketplace." (¶ 142.) That allegation might have some

27

`

relevance if Valassis were asserting a claim for trademark infringement.  It does not support a claim under the antitrust laws.  *See, e.g.*, *Sanderson* v. *Culligan Int'l Co.*, 415 F.3d 620, 623–24 (7th Cir. 2005) ("False statements about a rival's goods do not curtail output in either the short or the long run," and thus are "not actionable under the antitrust laws").

### (b)    Agreements with CPGs

Valassis makes essentially the same allegations about NAM's agreements with CPGs as it does about the retailer agreements.  It alleges, for example, that the CPG agreements—for ISPs, as well as for FSIs—are "exclusive long-term contracts," containing restrictive termination and renewal provisions, as well as "rights of first refusal" that favor NAM over its competitors.  (¶¶ 155–66.)  These allegations fail to establish that NAM's agreements are anticompetitive, for all the reasons set forth above.[7]

But Valassis's claims about the CPG agreements are even weaker than its claims about the retailer agreements, because Valassis does not even purport to allege that NAM used predatory prices to secure agreements with the CPGs.

---

[7]   As to the length of NAM's agreements with CPGs, the Complaint is even more vague than it is as to the retailer agreements.  Valassis alleges that the "term of the [CPG] contracts is often two, three, four or more years."  (¶ 156.)  It does not purport to allege how many of the contracts have two-year terms and how many have longer terms.  As noted above at p. 24, even an exclusive two-year contract is considered reasonable and not anticompetitive under the antitrust laws.  *See Advo*, 51 F.3d at 1204; *Barry Wright*, 724 F.2d at 237.

`

Instead, Valassis suggests that CPGs ***choose*** to award contracts to NAM because, if they do not, NAM will charge them "penalty" prices.  (¶ 165.)

Even assuming that is true, it does not mean that NAM's contracts are exclusionary.  Just the opposite:  calling the non-contract price a "penalty" is just an attempt to put a pejorative spin on the fact that NAM's contract prices offer ***discounts***.  Valassis does not and cannot allege that such discounts are predatory or even that they cannot be matched by aggressive discounting of Valassis's own (presumably higher) prices.  Accordingly, Valassis has no basis to claim that NAM's contracts are anticompetitive.

Valassis's failure to plead facts showing that it cannot profitably compete against NAM's offers by offering its own above-cost price discounts—which would not be sufficient to establish predatory pricing, but without which it cannot even begin to make out a viable antitrust claim—is especially notable in light of the 2010 settlement.  As Valassis notes in the first paragraph of its Complaint, the settlement of the prior litigation resulted in Valassis receiving a $500 million cash infusion from NAM.  The Complaint does *not* allege, however, that Valassis put any of that money toward expanding its output or lowering its prices in order to more effectively compete against NAM in the marketplace.  While Valassis was certainly free to spend its settlement money however it chose, it cannot seek shelter

`

in the antitrust laws for injuries that—according to its own allegations—are the result of lawful price competition.

As discussed above with respect to NAM's retailer agreements, the Supreme Court has held, repeatedly, that *any* form of price competition is lawful and pro-competitive, unless it results in predatory prices: "Low prices benefit consumers, regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition." *Atl. Richfield*, 495 U.S. at 340 (emphasis added). Thus, the Supreme Court has insisted on proof of below-cost pricing where discounts are at issue, in order to avoid "chill[ing] the very conduct the antitrust laws are designed to protect." *Matsushita*, 475 U.S. at 594. Absent any such allegation, calling NAM's discounts "penalties" might make them sound bad, but it does not state an antitrust claim. *See id.*

### 2.   No Predatory Bidding

Valassis also claims that NAM has unlawfully monopolized the alleged ISP market by engaging in "predatory bidding"—*i.e.*, paying "predatory and economically unjustified cash guarantees to retailers" in exchange for ISP aisle space. (¶¶ 106–115.) Valassis contends that by overpaying retailers, NAM has sought to drive Valassis out of that alleged market. That is Valassis's theory, but it is only a theory. There are no facts pled in the Complaint to support it, and the few facts Valassis has pled make its assertion of predatory bidding utterly implausible.

`

The Supreme Court has held that claims of predatory bidding are subject to the same rigorous standards as predatory pricing claims. *Weyerhaeuser Co.* v. *Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312 (2007). To state such a claim, Valassis must plead facts showing (1) "that the alleged predatory bidding led to below cost pricing of [NAM's] outputs," and (2) that NAM "has a dangerous probability of recouping the losses incurred in bidding up input prices through the exercise of monopsony power." *Id.* at 325.

In setting those standards, the Supreme Court has cautioned that "actions taken in a predatory-bidding scheme are often the very essence of competition," and there are "myriad legitimate reasons—ranging from benign to affirmatively procompetitive—why a buyer might bid up input prices." *Id.* at 323 (quotation marks omitted). Moreover, "a failed predatory-bidding scheme can be a 'boon to consumers,'" while even successful predatory bidding may have "little or no effect on consumer prices." *Id.* at 324 (quoting *Brooke Grp.*, 509 U.S. at 224). Accordingly, "the risk of chilling procompetitive behavior with too lax a liability standard" is "serious," and the standards a plaintiff must meet to proceed with such a claim are "not easy to establish." *Id.* at 320, 325 (quotation marks omitted).

Here, Valassis's predatory bidding allegations amount to no more than a bare recitation of legal elements, which the Supreme Court has held is insufficient for *any* type of claim. *Twombly*, 550 U.S. at 555. Valassis asserts, "upon

31

`

information and belief," that NAM's guarantees caused the "cost of the relevant output, ISPs sold to CPGs for placement in those retailers' stores, to exceed the revenues generated by [NAM] in the sale of those outputs to CPGs." (¶ 112.) But it has pled no facts to support that assertion. Among other things, Valassis has not identified the size of the alleged payments, the pricing of the relevant output, or the amount by which input costs supposedly exceeded NAM's revenues.

Nor does Valassis even purport to identify how many retailers allegedly received predatory payments. *Directory Sales Mgmt. Corp.* v. *Ohio Bell Tel. Co.*, 833 F.2d 606, 614 (6th Cir. 1987) (the "relevant area of inquiry" in a predatory pricing claim "should be [the defendant's] operations taken as a whole").[8]

Valassis includes a handful of references to what some unidentified retailers allegedly told it about NAM's guarantees—*e.g.*, that NAM is "throwing money" at the retailers and that NAM's offers are "beyond what any competitor would ever offer" a retailer. (¶¶ 108–111.) But those vague characterizations add nothing to its claim. *See, e.g.*, *Synergetics USA, Inc.* v. *Alcon Labs., Inc.*, No. 08-cv-3669, 2009 WL 435299, at *4 (S.D.N.Y. Feb. 23, 2009) (holding the "assertion that

---

[8]   *See Midwest Auto Auction, Inc.* v. *McNeal*, No. 11-cv-14562, 2012 WL 3478647, at *13 (E.D. Mich. Aug. 14, 2012) (allegations of "occasional low pricing [are] not sufficient to allege an antitrust injury"); *Invacare*, 2006 WL 3022968, at *9 (rejecting claim that defendant "could be liable for below-cost pricing to *some* customers" where plaintiff did not allege "prices below cost for the [relevant] market as a whole"); *see also Int'l Travel Arrangers* v. *NWA, Inc.*, 991 F.2d 1389, 1395–96 (8th Cir. 1993); *Morgan* v. *Ponder*, 892 F.2d 1355, 1361-62 (8th Cir. 1989).

`

Alcon sells its light sources for 'free' or 'unreasonably low prices' and that Alcon sells its light pipes for 'free or at negative cost,' are conclusory statements inadequate to support a claim of predatory pricing").  Valassis does not allege, for example, that it (or any other equally efficient competitor) was unable to match or beat NAM's offers without pricing below its <u>own</u> costs.  *See NicSand*, 507 F.3d at 453 (a mere "reduction" in plaintiff's profit margins is not "a concern of the antitrust laws").  In sum, the Complaint is devoid of sufficient facts to render plausible the assertion that NAM's offers to retailers actually resulted in below-cost ISP prices.

Worse still is Valassis's failure even to try to plead facts that would establish a "dangerous probability" of recoupment.  That failure is critical:  "Absent proof of likely recoupment, a strategy of predatory bidding makes no economic sense because it would involve short-term losses with no likelihood of offsetting long-term gains."  *Weyerhaeuser*, 549 U.S. at 325; *see GMA Cover Corp.* v. *Saab Barracauda LLC*, No. 10-cv-12060, 2012 WL 642739, at *7 (E.D. Mich. Feb. 8, 2012) (dismissing predatory pricing claim where plaintiff failed to allege "a plausible claim that there was a dangerous probability" of recoupment); *see also Brooke Grp.*, 509 U.S. at 225–26.

Valassis was required "to allege sufficient facts to show that the dangerous probability of recoupment is 'plausible on its face.'" *GMA Cover*, 2012 WL

`

642739, at *4 (quoting *Twombly*, 550 U.S. at 570).  Yet, the sum total of its allegations concerning recoupment is a single sentence, stating that "there is a dangerous probability that News, after successfully driving out or excluding competition in the ISP market, will recoup the losses it incurred in driving up input prices."  (¶ 114.)  That is just the kind of "threadbare recital[] of the elements of a cause of action" that the Supreme Court has held is insufficient to state a claim. *Iqbal*, 556 U.S. at 678; *see also GMA Cover*, 2012 WL 642739, at *9.

Valassis has not only failed to allege a predatory-bidding scheme that is plausible on its face, it has alleged the opposite.  According to the Complaint, NAM has been paying retailers the allegedly predatory cash guarantees since "shortly after Valassis entered the ISP market," ***in 2009***.  (¶¶ 10, 296.)  Yet, Valassis does not allege that, in the past four years, NAM has raised its ISP prices sufficiently above the competitive level to recoup its investment in the alleged predatory payments.  The fact that NAM's alleged scheme was in place for four years without achieving its intended result "is strong evidence that the [scheme] does not in fact exist."  *Matsushita*, 475 U.S. at 592; *see also Compuware Corp.* v. *Int'l Bus. Machines Corp.*, 366 F. Supp. 2d 475, 488 (E.D. Mich. 2005).

### 3.    No Other Anticompetitive Conduct

Unable to support its Section 2 claims with facts about exclusionary contracts or pricing, Valassis alleges that NAM engaged in other "unfair" or

`

"unethical" conduct, including that NAM threatened to sue Valassis; removed

Valassis ISP products from retailers' aisles; and misrepresented the number of

retailers that were part of its ISP network. (¶¶ 16, 133–42, 195–205, 285–90.)

None of these constitutes anticompetitive conduct under the Sherman Act.

First, Valassis's claim that NAM "improperly" threatened to sue Valassis is

not actionable. (¶¶ 37–41, 285–290.) Threatening litigation (like actually filing a

lawsuit) is conduct that is immune from antitrust liability, under the *Noerr-*

*Pennington* doctrine. *See Melea Ltd.* v. *Quality Models Ltd.*, 345 F. Supp. 2d 743,

758 (E.D. Mich. 2004); *Pennwalt Corp.* v. *Zenith Labs., Inc.*, 472 F. Supp. 413,

424 (E.D. Mich. 1979). In order to overcome *Noerr-Pennington* immunity,

Valassis must plead facts sufficient to show that the threatened litigation was a

"sham." *See id.* "To meet the sham exception, the plaintiff must show that the

petitioning conduct was (1) objectively baseless, and (2) concealed an attempt to

interfere with the plaintiff's business relationships." *GMA Cover*, 2012 WL

642739, at *10 (citing *Prof'l Real Estate Investors, Inc.* v. *Columbia Pictures*

*Indus., Inc.*, 508 U.S. 49, 60–61 (1993)). Valassis has failed to allege, even in

conclusory terms, that NAM's alleged threats of litigation were a sham, under this

definition. Because the Complaint provides no basis for the Court to "legitimately

infer that the threatened litigation was objectively baseless," Valassis's claim must

`

be dismissed.  *Neway Anchorlok Int'l, Inc.* v. *Longwood Indus., Inc.*, 107 F. Supp. 2d 810, 813 (W.D. Mich. 1999).

Second, Valassis has failed to plead any facts showing that any of the other "improper" conduct referenced in the Complaint—*e.g.*, removing Valassis ISPs from retailer aisles, and making alleged misrepresentations on its website—is conduct that "tends to destroy competition itself."  *Spectrum Sports*, 506 U.S. at 458.  The Supreme Court has warned against "transform[ing] cases involving business behavior that is improper for various reasons . . . into treble-damages antitrust cases."  *NYNEX*, 525 U.S. at 136–37; *see Brooke Grp.*, 509 U.S. at 225 ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws . . . .").

Consistent with those principles, the Sixth Circuit has held that "[i]solated tortious activity alone does not constitute exclusionary conduct for purposes of a § 2 violation, absent a significant and more than a temporary effect on competition, and not merely on a competitor or customer."  *Conwood Co., L.P.* v. *U.S. Tobacco Co.*, 290 F.3d 768, 783–84 (6th Cir. 2002) (emphasis added).  Here, isolated tortious activity is more than Valassis has alleged.  The Complaint identifies only two instances—one in Maryland and one in Texas—in which NAM representatives supposedly removed Valassis's ISPs from retail stores.  (¶¶ 199–200).  Yet, it fails to allege that either instance involved any *unlawful* conduct by NAM.  And, it does

36

`

not even attempt to show that those acts had any negative effect on Valassis *itself*, much less "a significant and more than a temporary effect on competition."  *Id.*

Likewise, Valassis has failed to plead any facts that would allow the Court to infer that NAM's supposed misrepresentations had any impact at all on the competitive process.  As a matter of law, such conduct is presumed *not* to have an anticompetitive impact.  *Am. Council of Certified Podiatric Physicians & Surgeons* v. *Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 370 (6th Cir. 2003) ("An antitrust claim premised primarily on advertising or speech must overcome a presumption that such advertising or speech had a *de minimis* effect on competition.").  Here, there are no facts pled to overcome that presumption.

### B.      Valassis Also Has Failed to Allege Facts Showing Specific Intent to Monopolize or a Dangerous Probability of Monopolization

Valassis's attempted monopolization claim (Count III) fails for two additional and independent reasons:  Valassis has failed to allege facts sufficient to show:  (1) that NAM had a specific intent to monopolize the alleged FSI market; and (2) that it was dangerously probable that NAM would succeed in obtaining a monopoly in that alleged market.  *Midwest*, 2012 WL 3478647, at *11.

#### 1.      No Specific Intent to Monopolize

Specific intent to monopolize requires more than just an allegation that NAM had "a general intent to do the act" of which it has been accused.  *Times-Picayune Pub. Co.* v. *United States*, 345 U.S. 594, 626 (1953).  Moreover, such

`

intent may not be inferred "from legitimate business practices aimed only at succeeding in competition." *Langenderfer*, 917 F.2d at 1432; *see also Blair Foods, Inc.* v. *Ranchers Cotton Oil*, 610 F.2d 665, 670 (9th Cir. 1980) ("The mere intention of [a defendant] to exclude competition . . . is insufficient to establish specific intent to monopolize by some illegal means." (citation omitted)).

Thus, as the leading antitrust treatise has summarized, "there is at least one kind of intent that the proscribed 'specific intent' clearly *cannot* include:  the mere intention to prevail over one's rivals."  3B Areeda & Hovenkamp, Antitrust Law ¶ 805b (3d ed. 2008) ("Areeda & Hovenkamp") (emphasis added).  Rather, to state an attempted monopolization claim, Valassis was required to allege facts showing that NAM possessed "a specific intent to destroy competition or build monopoly" in the alleged FSI market.  *Times-Picayune*, 345 U.S. at 626.  The Complaint contains no such facts.

## 2.   No "Dangerous Probability" of Success

Valassis also has failed to plead facts demonstrating a "dangerous probability" that NAM would succeed in obtaining a monopoly in the alleged FSI market.  The dangerous probability test is *not* met "by inquiring only whether the defendant has engaged in 'unfair' or 'predatory' tactics."  *Spectrum Sports*, 506 U.S. at 459.  The "concern with an attempt" is not whether NAM caused harm to Valassis, but rather whether it could "bring about reduced output and 'monopoly'

`

prices" in the relevant market.  3B Areeda & Hovenkamp, ¶ 807c2 (citing

*Spectrum Sports*, 506 U.S. at 455); *see also Langenderfer*, 917 F.2d at 1422–23.

Valassis has not alleged any facts suggesting that NAM's conduct with

respect to FSI coupons "threatens to create durable monopoly power."  3B Areeda

& Hovenkamp, ¶ 807j.  To the contrary, Valassis's claim is that NAM has engaged

in the supposedly exclusionary conduct for at least <u>*four years*</u> (since 2010, when

the prior litigation settled), and as many as <u>*seven years*</u> (since 2006, when the prior

litigation began).  Yet, in all that time NAM is not alleged to have acquired

monopoly power.  *See Taylor Pub. Co.* v. *Jostens, Inc.*, 216 F.3d 465, 474 (5th Cir.

2000) (observing that an attempted monopolization claim "necessarily involves

conduct which *has not yet succeeded*" in creating a monopoly (emphasis added)).

Where, as here, the challenged conduct has continued for a long time

without achieving monopoly power, there is no "dangerous probability" that it will

lead to the achievement of such power in the future.  Thus, the Areeda &

Hovenkamp treatise concludes:  "We would find attempt claims <u>presumptively</u>

<u>implausible</u> if the challenged conduct has been in place <u>for at least two years</u> and

the remaining market remains robustly competitive . . . ."  3B Areeda &

Hovenkamp, ¶ 807f (emphasis added); *see Sterling Merch., Inc.* v. *Nestle, S.A.*, 656

F.3d 112, 126 (1st Cir. 2011) (applying implausibility presumption); *Virgin Atl.*

*Airways Ltd.* v. *British Airways PLC*, 257 F.3d 256, 269 (2d Cir. 2001) (same).

`

This is just such an implausible attempt claim, and it should be dismissed.

### C.   Valassis Has Failed to Plead Antitrust Injury

To state a claim for relief under the antitrust laws, Valassis must show that it has suffered an "antitrust injury." The antitrust injury requirement cannot be satisfied "merely by showing 'injury causally linked to an illegal presence in the market.'" *Atl. Richfield*, 495 U.S. at 334 (quoting *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Rather, the "injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation," *Brunswick*, 429 U.S. at 488, and must be "attributable to an anti-competitive aspect of the practice under scrutiny." *Atl. Richfield*, 495 U.S. at 334 (quotation marks omitted). "At a minimum, this requirement means that one competitor may not use the antitrust laws to sue a rival merely for vigorous or intensified competition." *NicSand*, 507 F.3d at 450.

The Sixth Circuit has held that "when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law." *Id.*. Here, Valassis's Complaint does not "put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust injury."—*i.e.*, an injury attributable to an anticompetitive aspect of NAM's alleged conduct. *Id.* at 451 (quoting *Twombly*, 550 U.S. at 557). It therefore must be dismissed.

40

`

According to the Complaint, NAM's conduct caused four different forms of harm to competition:  (1) harming retailers by offering "predatory cash guarantees" that coerce them to contract with NAM (¶ 293); (2) harming CPGs by charging a "penalty" that coerces them to choose NAM's products over those of competitors (¶ 304); (3) harming CPGs by increasing ISP costs (¶ 313); and (4) harming consumers of CPGs' products by reducing output of FSI and ISP coupons and advertising to consumers (¶¶ 322–23).  Each is either (a) implausible, (b) unconnected to any injury *Valassis* claims to have suffered, or (c) both.

**_First_**, Valassis has failed to plead any cognizable harm to retailers because it has failed to plead facts showing that NAM's alleged cash guarantees were actually "predatory."  Absent such facts, all that Valassis has alleged is that NAM provided a *benefit* to retailers:  "Higher prices for inputs obviously benefit existing sellers of inputs and encourage new firms to enter the market for input sales as well."  *Weyerhaeuser*, 549 U.S. at 324 n.4.[9]

---

[9]   Valassis also does not explain *how* NAM would recoup its investment in the supposedly predatory payments to retailers, assuming it were able to do so.  If NAM were to "increas[e] the price of the output (ISPs sold to CPGs)," then retailers might suffer no harm at all as a result of the alleged predatory scheme. (¶ 299.)  If, on the other hand, it were to "reduc[e] the price of the input" (*id.*), then retailers might receive lower payments in the future but consumers might experience no effect on prices.  That is why the Supreme Court has observed that "predatory bidding presents less of a direct threat of consumer harm than predatory pricing," and that even a successful predatory-bidding scheme may have "little or no effect on consumer prices."  *Weyerhaeuser*, 549 U.S. at 324.

`

Furthermore, by paying higher prices for inputs than competitors, like Valassis, were willing to offer, NAM engaged in price competition.  *See id.* at 323 ("Just as sellers use output prices to compete for purchasers, buyers use bid prices to compete for scarce inputs.").  If the result of such competition was that NAM won business and Valassis lost business, that is not an injury for which the antitrust laws provide relief.  "A firm that reduces costs and expands sales injures rivals— sometimes fatally. . . . These injuries to rivals are by-products of vigorous competition, and the antitrust laws are not balm for rivals' wounds." *Langenderfer*, 917 F.2d at 1422 (quotation marks omitted).[10]

**<u>Second</u>**, Valassis claims that CPGs are harmed by NAM's pricing because of "penalties" NAM charges to CPGs who choose to buy FSIs from Valassis.  Valassis claims that, faced with such penalties, some CPGs that would prefer to do business with Valassis are "coerced" into buying from NAM.  (¶ 304.)  But, as discussed, that is no different from alleging that CPGs choose to contract with NAM because of the *discounts* it offers them.

Any loss of business that Valassis may have suffered because NAM offered lower prices to customers who *chose* to buy more of NAM's own products is not

---

[10]   Nor do the other "anticompetitive practices" that Valassis asserts with respect to retailers support a claim of antitrust injury.  NAM's contracts benefit retailers, as explained above.  And Valassis has not even tried to show how "removing Valassis' ISPs from retailers stores" or "misrepresenting the breadth of News' retailer network" causes harm to anyone other than (perhaps) Valassis.

`

"injury of the type the antitrust laws were intended to prevent." *Brunswick*, 429

U.S. at 489.  Just the opposite.  "To hold that the antitrust laws protect competitors

from the loss of profits due to such price competition would, in effect, render

illegal any decision by a firm to cut prices in order to increase market share.  The

antitrust laws require no such perverse result." *Cargill*, 479 U.S. at 116.

Even if Valassis had pled facts to show that CPGs who chose to contract

with Valassis for their FSI products paid higher prices for ISP products (*see, e.g.*,

¶¶ 25–26), that would not give rise to an antitrust injury for which *Valassis* could

be compensated.  As NAM's competitor, higher market prices "would have

worked to [Valassis's] advantage," not to its detriment.  *Atl. Richfield*, 495 U.S. at

336; *see also Matsushita*, 475 U.S. at 583–84 (holding that a conspiracy to charge

higher prices "would indeed violate the Sherman Act, but it could not injure

respondents:  as petitioners' competitors, respondents stand to gain from any

conspiracy to raise the market  price" (citations omitted)).[11]

---

[11] That some CPGs have themselves filed an antitrust lawsuit against NAM—
complaining about higher prices—is thus irrelevant to determining whether
Valassis, as a competitor, has antitrust standing.  "[T]he charging of a high
price is, so far as potential competitors are concerned, an *attracting* rather than
an *excluding* practice." *Blue Cross & Blue Shield United of Wis.* v. *Marshfield
Clinic*, 65 F.3d 1406, 1413 (7th Cir. 1995) (emphasis added).  Moreover,
allegations that merely repeat *other* allegations, made by *different* plaintiffs in a
*different* lawsuit are not allegations of fact that can support a claim for relief.
*See Hailes* v. *Free*, No. 12-cv-00687, 2012 WL 5988726, at *5 (S.D. Ohio Nov.
29, 2012) ("Plaintiff cannot rely on unrelated factual allegations contained in an
unrelated case to state a claim upon which relief may be granted.").

`

***Third***, Valassis asserts that NAM increases costs for some CPGs by keeping or installing its own ISPs in stores that are under contract with Valassis.  (¶¶ 312–13.)  But, Valassis has not pled any facts showing that NAM caused CPGs that do business with Valassis to incur higher costs, or even that Valassis itself incurred higher costs as a result of NAM's conduct.  Its bare assertions do not establish antitrust injury.  *NicSand*, 507 F.3d at 451.

***Finally***, Valassis says that NAM's conduct has reduced "output of FSI and ISP coupons" and, because "fewer coupons are available to consumers," consumers end up paying higher prices for CPGs' products "than would exist in a competitive marketplace."  (¶¶ 323–24.)  That claim is simply implausible.

Valassis has failed to plead facts showing that NAM's conduct actually reduced marketwide output of FSI or ISP products.  And, even if it had, Valassis has failed to plead facts showing that a reduction in coupons has led or would lead to higher prices for consumer goods.  For that to be true, NAM's conduct would have to have caused reduced price competition *among CPGs themselves*.  The Complaint contains no facts to support that conclusion.

## D.   Valassis Has Failed to Allege Facts Sufficient to Support Its Bundling and Tying Claims

As set forth above, the bundling and tying claims are subject to the Court's June 2011 Order, and should be dismissed from the Complaint.  By asserting such claims here, Valassis is in breach of its contractual agreement to forego a jury trial.

44

`

(*See* Agreement at 1.)  If the Court decides to consider the bundling and tying claims, they should be dismissed under Rule 12(b)(6).

### 1.    <u>Bundling</u>

Bundling is a pro-competitive business practice that "saves distribution and consumer transaction costs."  *Microsoft*, 253 F.3d at 87.  Bundling also benefits customers, as "[b]uyers often find package sales attractive" and for that reason, "a seller's decision to offer such packages can merely be an attempt to compete effectively—conduct that is entirely consistent with the Sherman Act."  *Jefferson Parish Hosp. Dist. No. 2* v. *Hyde*, 466 U.S. 2, 12 (1984); *see PeaceHealth*, 515 F.3d at 895 ("Bundled discounts generally benefit buyers because the discounts allow the buyer to get more for less.").

In order to plead *unlawful* bundling, Valassis must allege facts showing that that:  (1) NAM sold the bundled product below its incremental cost; and (2) the probable effect of the bundled discount is to lessen competition substantially in the market for the competitive product.  *PeaceHealth*, 515 F.3d at 903; Order, at A-4 to A-5.  Valassis alleges "on information and belief" that, based on "average" FSI costs and rates, NAM "has sold FSIs below [its] incremental cost."  (¶¶ 245, 407, 461–464.)  Even assuming the truth of that allegation, Valassis is not able to show any substantial effect on competition, for two reasons.

`

First, to establish that a discount is predatory, courts require that a plaintiff allege pricing "below cost for the [relevant] market *as a whole*." *See Invacare Corp.* v. *Respironics, Inc.*, No. 04-cv-1580, 2006 WL 3022968, at *9 (N.D. Ohio Oct. 23, 2006) (emphasis added). Valassis's allegations of "average" costs and "average" rates falls short of this standard.

Second, courts have recognized that the potentially market-distorting effect of a bundled offer derives from the potential to "exclud[e] less diversified but more efficient producers." *PeaceHealth*, 515 F.3d at 897. For precisely that reason, bundled discounts generally do not harm competition where competitors can offer a similar bundle. *See Invacare*, 2006 WL 3022968, at *12 ("Defendant's bundle does not unfairly distort the marketplace because . . . Plaintiff can sell a similar bundle."). Valassis alleges that it entered the alleged ISP market over four years ago, and has subsequently won contracts with several large retailers, including SuperValu, Winn Dixie, Super Save, Rite Aid, and Family Dollar Stores. (¶¶ 10, 199, 202.) Given Valassis's substantial competitive presence, and its own ability to bundle FSI and ISP, the antitrust concern is nonexistent. This is especially true given that Valassis has failed to allege that it cannot profitably compete by offering a similar bundle. *See Invacare*, 2006 WL 3022968, at *12; *Ortho Diagnostic Sys.*

46

`

v. *Abbott Labs., Inc.*, 920 F. Supp. 455, 470–71 (S.D.N.Y. 1996).[12]  Because

Valassis has not pleaded facts to show that NAM's bundled discounts have a

substantial harmful effect on competition, its bundling claim must be dismissed.[13]

### 2.    Tying

Valassis also has failed to state a valid tying claim.  In order to do so,

Valassis must allege:  "(1) the tying and tied goods are two separate products;

(2) the defendant has market power in the tying product market; (3) the defendant

affords consumers no choice but to purchase the tied product from it; and (4) the

tying arrangement forecloses a substantial volume of commerce."  *See Microsoft*,

253 F.3d at 85; Order, at A-5 to A-6.

Valassis's allegations as to market definition, market power, and substantial

foreclosure all are inadequate.[14]  But, even they had been adequately pled, the tying

claim still fails because Valassis has failed to allege that "purchase of the tying

---

[12]  Valassis alleges that it is "is unable to offer CPGs a competitive or economically equivalent bundle of ISPs and FSIs" because its retailer network is "much smaller."  (¶¶ 409, 411.)  But Valassis does not plead any facts to show how having fewer customers prevents it from competing on price or makes NAM's discounts exclusionary.

[13]  For the same reasons, Valassis's California Unfair Trade Practices Act claim (Count XI), which just repeats its conclusory bundling allegations, also should be dismissed.  Further, to the extent that Valassis asserts this claim to try to take advantage of a different legal standard than federal antitrust law, that effort is barred by the Court's Order, which establishes the legal standard for any bundling claim Valassis may be able to assert.

[14]  *See* Defendants' Opposition to Plaintiff's Motion for Expedited Discovery, which is being filed concurrently with this Motion, at pp. 19–22.

47

`

product together with the tied product was the buyer's only viable economic

option." *Tricom, Inc.* v. *Elec. Data Sys. Corp.*, No. 92-cv-76374, 1996 WL

224762, at *1 (E.D. Mich. Mar. 6, 1996).  Because Valassis does not purport to

show that NAM <u>expressly</u> refused to sell the allegedly tied products separately, it

must allege that "the individual products are priced such that the buyer is coerced

to accept both products in a discounted package." *Synergetics*, 2009 WL 435299,

at *3.  But there are no facts pled in the Complaint to show coercion.  Valassis

vaguely states that it failed to win business in "many" cases where NAM offered a

bundle.  But it concedes that it has won FSI business even in the face of NAM's

bundled offers.  (¶ 263.)  Valassis does not explain why <u>any</u> CPGs would choose to

buy FSI and ISP products separately, if the only economically viable option NAM

offers is to buy them together.  *See Ramallo Bros. Printing, Inc.* v. *El Dia, Inc.* 392

F. Supp. 2d 118, 135 (D.P.R. 2005) ("Defendants cannot be offering the 'only

viable economic option' . . . when advertisers frequently reject their offers.").

    Moreover, although Valassis has alleged what it believes to be NAM's

bundled and unbundled FSI rates (¶¶ 460–464), it has not pleaded NAM's in-store

rates.  Instead, Valassis alleges that NAM "told *one* CPG that its ISP prices would

increase by 20%" if not purchased in a bundle.  (¶ 253 (emphasis added).)  That

does not "plausibly suggest . . . that it is prohibitively expensive to buy the [two

products] separately." *Synergetics*, 2009 WL 435299, at *4.

`

## IV.    THE STATE LAW CLAIMS SHOULD BE DISMISSED

Valassis's claims under Michigan's Antitrust Reform Act and California's Cartwright Act rest on the same allegations as its federal antitrust claims, and fail for the same reasons.  "Michigan antitrust law is identical to federal law and follows the federal precedents."  *Little Caesar Enters.* v. *Smith*, 895 F. Supp. 884, 898 (E.D. Mich.1995); *see also Midwest*, 2012 WL 3478647, at *5 n.5.  Likewise, it is "well established that [i]nterpretation of federal antitrust law is . . . applicable to the Cartwright Act."  *Universal Grading Serv.* v. *eBay, Inc.*, No. 09-cv-2755, 2012 WL 70644, at *10 (N.D. Cal. Jan. 9, 2012) (quotation marks omitted).

Furthermore, the only basis Valassis has asserted for subject matter jurisdiction over the state law claims is supplemental jurisdiction under 28 U.S.C. § 1367.  If the Court dismisses the federal antitrust claims, it should decline to exercise supplemental jurisdiction over Valassis's state law claims and dismiss them as well.  *See Reynosa* v. *Schultz*, 282 F. App'x 386, 391 (6th Cir. 2008) ("Ordinarily, where all federal claims have been dismissed, federal courts should decline to exercise supplemental jurisdiction over state law claims."); *Musson Theatrical, Inc.* v. *Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).

## <u>CONCLUSION</u>

For the foregoing, reasons, NAM respectfully requests that the Court dismiss Valassis's Complaint with prejudice.

`

Dated:  December 19, 2013          Respectfully submitted,

                                    BUTZEL LONG
                                    a professional corporation

                                    By: /s/ David F. DuMouchel
                                         **David F. DuMouchel (P25658)**
                                         **Joseph E. Richotte (P70902)**
                                    150 West Jefferson Avenue, Suite 100
                                    Detroit, Michigan 48226
                                    (313) 225-7000
                                    dumouchd@butzel.com
                                    richotte@butzel.com
                                    *Attorneys for Defendants*

                                    **Kenneth A. Gallo (N.Y. Bar No. 4430369)**
                                    **Andrew C. Finch (N.Y. Bar No. 4435913)**
                                    **(application for admission to be submitted)**
                                    **William Michael (N.Y. Bar No. 4296356)**
                                    **(application for admission to be submitted)**
                                    **Jane B. O'Brien (N.Y. Bar No. 4484457)**
                                    PAUL, WEISS, RIFKIND, WHARTON &
                                    GARRISON LLP
                                    2001 K Street, NW
                                    Washington, D.C. 20006-1047
                                    (202) 223-7300
                                    kgallo@paulweiss.com
                                    afinch@paulweiss.com
                                    wmichael@paulweiss.com
                                    jobrien@paulweiss.com
                                    *Co-Counsel for Defendants*

`

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 19, 2013, I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system, which will send

notification of such filing to all attorneys of record.


/s/ David F. DuMouchel
David F. DuMouchel (P25658)