UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALASSIS COMMUNICATIONS, INC.,

Plaintiff,

v.

NEWS CORPORATION; NEWS
AMERICA MARKETING, a/k/a NEWS
AMERICA INC., a/k/a NEWS AMERICA
MARKETING GROUP; NEWS
AMERICA MARKETING FSI, LLC,
a/k/a/ NEWS AMERICA MARKETING
FSI, INC.; and NEWS AMERICA
MARKETING IN-STORE SERVICES,
LLC a/k/a NEWS AMERICA
MARKETING IN-STORE SERVICES,
INC.,

Defendants.

Case No. 2:13-cv-14654-AJT-PJK

HON. ARTHUR J. TARNOW
MAG. PAUL J. KOMIVES

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ...............................................................1

ARGUMENT ...........................................................................................2

I.    VALASSIS'S CLAIMS ARE BARRED BY THE RELEASE ......................2

II.    THE BUNDLING AND TYING CLAIMS SHOULD BE DISMISSED .........................................................................................6

III.    THE PREDATORY BIDDING CLAIM SHOULD BE DISMISSED .........10

IV.    THE EXCLUSIVE DEALING CLAIMS SHOULD BE DISMISSED ........12

V.    VALASSIS HAS FAILED TO STATE A CLAIM FOR MONOPOLIZATION BASED ON TORTIOUS CONDUCT ....................19

VI.    THE ATTEMPTED MONOPOLIZATION CLAIM FAILS .......................20

VII.    VALASSIS HAS FAILED TO PLEAD ANTITRUST INJURY ................22

VIII.    ANY SURVIVING CLAIMS SHOULD BE REFERRED TO THE ANTITRUST EXPERT PANEL, OR STAYED ..........................................24

IX.    VALASSIS SHOULD NOT BE GRANTED LEAVE TO AMEND ...........25

CONCLUSION ......................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Council of Certified Podiatric Physicians and Surgeons* v. *Am. Bd. of Podiatric Surgery, Inc.*,
323 F.3d 366 (6th Cir. 2003) ............................................................................20

*Barry Fiala, Inc.* v. *Arthur Blank & Co., Inc.*,
No. 02-cv-2282, 2003 WL 22309442 (W.D. Tenn. Feb. 19, 2003) ...................22

*Bookhouse of Stuyvesant Plaza, Inc.* v. *Amazon.com, Inc.*,
No. 13-cv-1111, 2013 WL 6311202 (S.D.N.Y. Dec. 5, 2013)............................22

*Brown* v. *Donahoe*,
No. 12-cv-3086, 2014 WL 652277 (W.D. Tenn. Feb. 19, 2014) .........................3

*Cargill, Inc.* v. *Monfort of Colo., Inc.*,
479 U.S. 104 (1986)............................................................................................24

*Cascade Health Solutions* v. *PeaceHealth*,
515 F.3d 883 (9th Cir. 2008) ...............................................................................9

*CBC Cos., Inc.* v. *Equifax, Inc.*,
561 F.3d 569 (6th Cir. 2009) .......................................................................22, 23

*Conwood Co.* v. *U.S. Tobacco Co.*,
290 F.3d 768 (6th Cir. 2002) .......................................................................19, 20

*E.I. Du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) .............................................................12, 14, 17

*GMA Cover Corp.* v. *Saab Barracuda LLC*,
No. 10-cv-12060, 2012 WL 642739 (E.D. Mich. Feb. 8, 2012) .......................11

*Hall* v. *Memphis City Sch.*,
No. 12-cv-2312, 2013 WL 4056360 (W.D. Tenn. Aug. 12, 2013) ......................3

*Indeck Energy Servs., Inc.* v. *Consumers Energy Co.*,
250 F.3d 972 (6th Cir. 2000) ...............................................................15, 17, 19

*Invacare Corp.* v. *Respironics, Inc.*,
No. 04-cv-1580, 2006 WL 3022968 (N.D. Ohio Oct. 23, 2006) ........................9

*JM Computer Servs., Inc.* v. *Schlumberger Tech., Inc.*,
No. 95-cv-20349, 1996 WL 241607 (N.D. Cal. May 3, 1996) .........................17

*MiniFrame Ltd.* v. *Microsoft Corp.*,
No. 11-cv-7419, 2013 WL 1385704 (S.D.N.Y. Mar. 28, 2013) .......................10

*NicSand, Inc.* v. *3M Co.*,
507 F.3d 442 (6th Cir. 2007) ......................................................*passim*

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
940 F. Supp. 2d 367 (E.D. La. 2013)................................................21

*Pro Search Plus, LLC* v. *VFM Leonardo, Inc.*,
No. 12-cv-2102, 2013 WL 3936394 (C.D. Cal. July 30, 2013) .................14, 17

*Richter Concrete Corp.* v. *Hilltop Concrete Corp.*,
691 F.2d 818 (6th Cir. 1982) .....................................................21

*Superior Care Pharmacy Inc.* v. *Medicine Shoppe Int'l, Inc.*,
No. 10-cv-207, 2011 WL 597065 (S.D. Ohio Feb. 10, 2011)............................4

*Surface Supplied, Inc.* v. *Kirby Morgan Dive Sys., Inc.*,
No. 13-cv-0575, 2013 WL 5496961 (N.D. Cal. Oct. 3, 2013)..........................22

*Synergetics USA, Inc.* v. *Alcon Labs., Inc.*,
No. 08-cv-3669, 2009 WL 435299 (S.D.N.Y. Feb. 23, 2009) ...........................9

*Watson Carpet & Floor Covering, Inc.* v. *Mohawk Indus., Inc.*,
648 F.3d 452 (6th Cir. 2011) ....................................................5, 6

*Weiner* v. *Klais and Co., Inc.*,
108 F.3d 86 (6th Cir. 1997) ....................................................3, 4

*Weyerhaeuser Co.* v. *Ross-Simmons Hardwood Lumber Co., Inc.*,
549 U.S. 312 (2007)............................................................11, 12

*Whatman, Inc.* v. *Davin*,
No. 08-cv-2103, 2009 WL 6323200 (D.S.C. Dec. 15, 2009)........................10, 11

*Wyser-Pratte Mgmt. Co., Inc.* v. *Telxon Corp.*,
413 F.3d 553 (6th Cir. 2005) .....................................................3

*ZF Meritor, LLC* v. *Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012) ........................................................................*passim*

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ..................................................................1

Areeda & Hovenkamp, Antitrust Law (3d ed. 2008) .............................................20

NAM respectfully submits this Reply in support of its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Dkt. No. 22.)[1]

## PRELIMINARY STATEMENT

By filing a Complaint filled with allegations of pre-release conduct, but failing to identify them as such, Valassis tried to circumvent the parties' 2010 settlement agreement and release.  Its gambit failed.  The fact that the Complaint relies on pre-release conduct is beyond dispute.  Caught in its attempt, Valassis now belatedly admits that its claims are based—at least in part—on allegations of conduct that "occurred prior to the release." (Opp'n 49.)  That admission alone warrants dismissal.

Four years ago, Valassis agreed forever to release and made a covenant not to sue NAM for *any* claims based on *any* "allegations, <u>actions</u>, inaction, <u>conduct</u> or <u>facts</u> of any kind existing up to the date" of the settlement agreement.  Valassis cannot now deprive NAM of the principal benefit of that settlement—repose—based on a Complaint that so transparently violates the parties' agreement.

Just as flagrant—and futile—is Valassis's attempt to get around the prior agreement in which it expressly *waived* the right to a jury on any post-release bundling and tying claims, and agreed that the Court-appointed antitrust special

---

[1]  NAM incorporates the terms and definitions used in its Motion to Dismiss.  (*See* Dkt. No. 22.)  Citations to "Ex. __" refer to Exhibits submitted with NAM's Motion to Dismiss (Dkt. Nos. 22-2 through 22-8).

masters would, in the first instance, provide its "*exclusive remedy*" for such claims. In the face of that agreement, Valassis argues that it has the right to a jury on its bundling and tying claims because News Corporation was not a party to the prior lawsuit. Adding a corporate affiliate to the caption does not excuse Valassis from its contractual obligations—especially when the Complaint asserts *exactly the same claims*, based on *exactly the same allegations* against all defendants. What's more, everyone knows that only NAM, not News Corporation, sells the products and services at issue in the Complaint. Permitting Valassis to so easily circumvent its prior agreement with NAM would render the agreement meaningless.

Finally, even if Valassis could escape dismissal under the terms of the release *and* the agreement to refer bundling and tying claims to the antitrust expert panel, it has no plausible claim for relief under the antitrust laws. Valassis's opposition repeats the same bare assertions and legal conclusions that make up its Complaint. It does not identify any post-settlement *factual allegations* establishing an antitrust violation and therefore the Complaint must be dismissed.

## ARGUMENT

### I.   VALASSIS'S CLAIMS ARE BARRED BY THE RELEASE

In its opposition brief, Valassis admits that its claims are based on allegations and facts that predate the parties' 2010 settlement agreement. (*See* Opp'n 22, 47–49.) Such claims are barred and must be dismissed.

Under the settlement agreement, Valassis forever released and made a covenant not to sue NAM on any cause of action "***arising from or based on*** any claims, ***allegations***, actions, inaction, ***conduct or facts of any kind existing up to the date of this Agreement***."  (Ex. 2 ¶ 6 (emphases added).)  Nothing in the agreement would allow Valassis to pursue claims that—by its own admission—are based on "factual allegations" that "relate to events that occurred *before* the parties' February 4, 2010 settlement agreement."  (Opp'n 46 (emphasis added).)

Unable to defend its position under the plain language of the settlement agreement, Valassis asks the Court to ignore that agreement, claiming it may not be considered at the pleading stage.  Valassis is wrong.  On a motion to dismiss, the court may consider any materials that "are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice."  *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).  That includes settlement agreements.  *See, e.g.*, *Brown v. Donahoe*, No. 12-cv-3086, 2014 WL 652277, at *4 (W.D. Tenn. Feb. 19, 2014); *Hall v. Memphis City Sch.*, No. 12-cv-2312, 2013 WL 4056360, at *2–3 (W.D. Tenn. Aug. 12, 2013).

Here, it is especially appropriate for the Court to consider the settlement agreement because the Complaint incorporates it by reference.  (¶¶ 1, 5, 12, 460, 462.)  *See Weiner* v. *Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (proper to consider documents underlying plaintiff's allegations where they "were

incorporated through reference to the plaintiff's rights").  Moreover, if Valassis were right, then any plaintiff could avoid dismissal of previously released claims by choosing not to attach a dispositive settlement agreement to its complaint. Valassis has not cited any authority to support such an extreme position, and we are not aware of any.  To the contrary, the Sixth Circuit has held that on a motion to dismiss a "defendant may introduce certain pertinent documents if the plaintiff fails to do so," to avoid the possibility that "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  *Id.*[2]

Valassis also tries to salvage its Complaint by arguing that it pled pre-release conduct in support of claims that purportedly "accrued after the settlement agreement."  (Opp'n 5 n.2, 47.)  But it is not enough for Valassis to allege the same conduct that was at issue in the prior case and then lodge a conclusory assertion that NAM's pre-release conduct *continued* after the settlement.  (*See, e.g.*, Opp'n 4–5.)  If that were so, then anytime parties settled an antitrust litigation, the plaintiff could turn around and sue the defendant in a new action based on the same

---

[2]    Valassis also is incorrect that release is an affirmative defense that it need not overcome on a motion to dismiss.  (*Cf.* Opp'n 47 n.15.)  "[A] complaint showing on its face that relief is barred by an affirmative defense is properly subject to a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."  *Superior Care Pharmacy Inc. v. Medicine Shoppe Int'l, Inc.*, No. 10-cv-207, 2011 WL 597065, at *13 (S.D. Ohio Feb. 10, 2011) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)) (dismissing claims on the basis of prior release).

facts, simply by asserting in conclusory form that the defendant's pre-settlement conduct "continued." That is not the law. Rather, Valassis must identify new post-release factual allegations that state a plausible claim for relief under the antitrust laws—which it has failed to do. (*See* Mot. 7–8.)

Valassis repeatedly references a *section heading* in its Complaint, followed by lists of paragraph numbers that it contends reflect "post-settlement schemes." (Opp'n 10, 21–22.) Yet, *none* of those paragraphs offers even basic factual information about when the purported conduct occurred—including, for example, when the purportedly anticompetitive contracts were signed or who NAM's counterparties were.

Unable to refute NAM's showing that the seven- and ten-year retailer contracts referenced in the Complaint plainly pre-date the release (*see* Mot. 23–24), Valassis argues that these are "merely . . . *two* examples of long-term contracts [that] existed before the parties' settlement." (Opp'n 22.) But Valassis fails to mention that these are the *only* two examples of "long-term" contracts pled in the Complaint. Its attempt to prop up conclusory assertions of post-settlement misconduct with pre-settlement facts should be seen for what it is and rejected under the plain language of the release.

Valassis's reliance on *Watson Carpet* does not change this result. Valassis expressly agreed to release claims "arising from or based on . . . allegations . . .

conduct or facts of any kind" existing as of the date of the settlement agreement. (Ex. 2 ¶ 6.)  The release in *Watson Carpet*, by contrast, contained no similar prohibition on the plaintiff's ability to rely upon pre-release facts in support of a new action.  *See Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 459–61 (6th Cir. 2011).  Further, the complaint in *Watson Carpet* contained detailed and specific allegations of a *post*-settlement refusal to deal, *id.* at 456, whereas the Complaint here fails to include any factual allegations of post-settlement wrongdoing.[3]

## II.    THE BUNDLING AND TYING CLAIMS SHOULD BE DISMISSED

Valassis previously agreed that the "exclusive remedy" for any post-settlement bundling and tying claims against NAM would be determined in the first instance by the Court-appointed panel of antitrust experts.  (*See* Ex. 3 at 1.) Yet its opposition brief fails even to mention that prior agreement.[4]

---

[3]   Nor does the reference in the Antitrust Expert Panel's 2011 Report to "evidence of past conduct or previous judicial findings" help Valassis.  (Opp'n 47.) Nothing about the Panel's Report purports to or could modify the scope of the release, which was part of a separate, integrated settlement agreement.  (*See* Ex. 2 ¶ 10.)

[4]   Valassis now concedes that it waived its right to a jury trial on its bundling and tying claims against NAM (but not News Corporation) under the Antitrust Panel Agreement.  (*See* Opp'n 42 n.12.)  Instead, Valassis states that it seeks to try those claims to the Court.  (*See id.*)  Yet, even while Valassis now purports to give effect to the jury waiver in the Antitrust Panel Agreement, its opposition ignores its obligation—in the same agreement—to bring any future bundling and tying claims before the Antitrust Expert Panel.

Valassis offers two arguments in defense of its ability to assert bundling and tying claims here—both of which fail.  (Opp'n 41–42.)  First, Valassis points to the June 2011 Order, which provides that a party "may, but is not required to, seek relief from the District Court by way of motion for further injunctive relief, contempt, or otherwise."  (Ex. 6 at A-2.)  It argues that the reference to "otherwise" seeking relief permits Valassis to bring bundling and tying claims in a new action.  (Opp'n 41–42.)  But nothing in the June 2011 Order supersedes—or purports to alter—the plain language of the Antitrust Panel Agreement providing that the panel will determine the "exclusive remedy" for future bundling and tying claims.

Second, Valassis contends that because News Corporation is named as a defendant in the Complaint, but was not a signatory to the Antitrust Panel Agreement, it may proceed before a jury with the bundling and tying claims.  (*See id.* 35, 42.)  But Valassis cites no authority for that proposition, and there is none.[5]  It would be an absurd result if Valassis were precluded by the Antitrust Panel Agreement from seeking a jury trial against NAM on its bundling and tying claims, but allowed to bring *exactly the same claims* before a jury against NAM's corporate parent, News Corporation.  Nor would it make any sense for the Court

---

[5]   As NAM showed, courts consistently have rejected the proposition that a plaintiff may plead around agreements governing the forum in which future claims would be heard by suing an affiliated entity that was not a signatory to the parties' agreement.  (*See* Mot. 12–13.)  Valassis offers no reasoning and no authority in support of its effort to distinguish those cases, and cites no case in which any court has found the result it urges here.  (*See* Opp'n 42 n.13.)

independently to consider claims pled against News Corporation that are factually and legally *identical* to those that Valassis is required to submit to the Antitrust Expert Panel.  This is particularly true because everyone knows that News Corporation does not sell the products and services at issue, only NAM does.[6]

Because the Antitrust Panel Agreement so clearly bars Valassis from presenting its bundling and tying claims in a new complaint for damages, the Court need not reach the question of whether Valassis adequately pled those claims.  Should it do so, however, it also is clear that Valassis has not carried its burden of alleging facts that plausibly state a bundling or tying offense.  Indeed, despite the inflammatory accusations it has made against NAM in the Complaint, Valassis's counsel recently admitted on the record that Valassis *does not know* whether it has a basis to allege that NAM has engaged in unlawful bundling and tying.  (No. 06-cv-10240, Dkt. No. 435-3, 2/3/2014 Hearing Tr. at 35.)

Valassis asserts that due to purported "high barriers to entry," the alleged bundles offered by NAM will "eliminate competition entirely."  (Opp'n 37.)  But its own allegations demonstrate the contrary.  Valassis entered the purported ISP market approximately four years ago, and has subsequently won contracts with

---

[6]   Valassis's threadbare assertion that News Corporation "approved" the activities of NAM (¶ 60) does not suffice to state an independent claim against News Corporation, or even make it a proper party to this lawsuit.  Moreover, naming News Corporation as a defendant does not allow Valassis to escape the terms of the 2010 release, which plainly applies to claims against News Corporation as well as against the other NAM entities.  (*See* Ex. 2 ¶ 6.)

multiple large retailers to serve as their "exclusive ISP provider." (¶¶ 10, 199, 202.) Valassis has competed in the alleged FSI market even longer, and controls a 35% share of that market. (¶¶ 234–235.) These allegations eviscerate Valassis's bundling claim, since they confirm that Valassis can compete against NAM by offering its own bundle of FSI and ISP, and has been able to do so for the past four years—*i.e.*, the entire time period at issue. *See Invacare Corp. v. Respironics, Inc.*, No. 04-cv-1580, 2006 WL 3022968, at *12 (N.D. Ohio Oct. 23, 2006).

Valassis's tying claims also fail. Valassis concedes that, to state a tying claim, it must show (*inter alia*) that NAM allegedly priced FSIs and ISPs such that customers had "no economically practical option other than to buy them both from [NAM]." (Opp'n 39.) The Complaint, however, offers no factual allegations plausibly suggesting that customers were coerced into purchasing ISP and FSI products together by NAM. Valassis cites to three paragraphs in the Complaint that it argues show coercion (*id.*, citing ¶¶ 251, 253, 254), but none of them establishes that customers found it "prohibitively expensive to buy the [two products] separately." *Synergetics USA, Inc. v. Alcon Labs., Inc.*, No. 08-cv-3669, 2009 WL 435299, at *4 (S.D.N.Y. Feb. 23, 2009). At most, they suggest that NAM offered discounts to customers who chose to buy multiple products from it. That does not state an actionable tying (or bundling) claim. *See Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 896 (9th Cir. 2008) ("[W]e should not be

too quick to condemn price-reducing bundled discounts as anticompetitive, lest we end up with a rule that discourages legitimate price competition.").

## III.   THE PREDATORY BIDDING CLAIM SHOULD BE DISMISSED

Valassis tries to support its predatory bidding claim by pointing to what some unidentified retailers purportedly told Valassis about NAM's guarantees at unspecified times—*e.g.*, that NAM is "losing money based on the high guarantees," that NAM is "throwing money" at the retailers, and that NAM's offers are "beyond what any competitor would ever offer" a retailer.  (Opp'n 26–27.)  But these vague allegations fail to support a plausible inference that NAM prices its ISP products below cost on a market-wide basis, as they say nothing about what NAM's costs (or profits) actually are.  *See, e.g.*, *MiniFrame Ltd. v. Microsoft Corp.*, No. 11-cv-7419, 2013 WL 1385704, at *5–6 (S.D.N.Y. Mar. 28, 2013) (To "plead the first element of a predatory pricing claim, a plaintiff must assert more than the mere allegation that the defendant's prices were below general market levels or the costs of a firm's competitors.  Instead, a plaintiff must plead something akin to what [defendant's] actual costs were . . . ." (internal quotation marks and citation omitted)), *aff'd*, No. 13-cv-1607, 2013 WL 6726974 (2d Cir. Dec. 23, 2013).  Nor, contrary to Valassis's argument, do legal conclusions based on "information and belief" suffice.[7]

---

[7]   Valassis relies on a report of a South Carolina Magistrate Judge that has never been cited by any subsequent case, *Whatman, Inc. v. Davin*, No. 08-cv-2103,

Valassis's predatory bidding claim also fails for the independent reason that it has pled no facts to show a dangerous probability that NAM will recoup its investment in the supposed below-cost prices.  *See Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc.*, 549 U.S. 312, 318–21, 325–26 (2007). Courts impose a high standard—dangerous probability—for demonstrating recoupment.  And, recoupment "requires an estimate of the cost of the alleged predation and a close analysis of . . . the structure and conditions of the relevant market."  *GMA Cover Corp. v. Saab Barracuda LLC*, No. 10-cv-12060, 2012 WL 642739, at *7 (E.D. Mich. Feb. 8, 2012).

The only thing Valassis cites as establishing a dangerous probability of recoupment are the same alleged comments of unnamed retailers discussed above. (Opp'n 27–28.)  That is inadequate.  Valassis has not alleged facts to show even that it would be *possible* for NAM to recoup its investment in a supposed years-long scheme of below-cost pricing, much less *dangerously probable*.

Last, it is important to note that NAM and Valassis compete for retailer space by paying retailers for it.  Valassis's conclusory allegations that NAM pays too much for retailer space threaten to chill the very competition the antitrust laws

---

2009 WL 6323200 (D.S.C. Dec. 15, 2009).  (Opp'n 28.)  But even in that case the complaining party alleged "the specific bids challenged, the amount of [those] bids, [the party's] own costs associated with these bids, and [the party's] reasoning for believing [its competitor's] costs could not be so different from its own that it was not pricing beneath any appropriate measure of its own costs." *Id.* at *4.  Valassis has alleged nothing comparable.

are intended to promote, and to deprive retailers of the benefits of vigorous competition. Such allegations should be viewed skeptically by courts, and sustained only where the plaintiff clearly provides factual support to distinguish predatory conduct from legitimate price competition. *See Weyerhaeuser*, 549 U.S. at 325 ("As with predatory pricing, the exclusionary effect of higher bidding that does not result in below-cost output pricing is beyond the practical ability of a judicial tribunal to control without courting intolerable risks of chilling legitimate procompetitive conduct." (internal quotation marks and citation omitted)). Here, Valassis has pled nothing more than that it is the disgruntled, losing competitive bidder for retailer space. That does not state an antitrust claim.

## IV.    THE EXCLUSIVE DEALING CLAIMS SHOULD BE DISMISSED

Valassis seeks to avoid dismissal of its exclusive dealing claims by reciting facts found to state a claim in other cases, from other circuits, and asserting that the same results should obtain here. But, unlike those cases—*ZF Meritor, LLC* v. *Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) and *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 (4th Cir. 2011)—Valassis has failed to plead factual allegations establishing that NAM used exclusive or exclusionary contracts to destroy competition in any relevant market. As a result, this Court need not look to other circuits' decisions as "guidepost[s]" for deciding this motion. (Opp'n 17.)

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007), controls the outcome of this case, and requires dismissal of Valassis's contract claims.

***First***, Valassis has failed to plead any factual allegations to support its assertion that NAM "compels" retailers and CPGs to enter into exclusive contracts. (Opp'n 19.)  Rather, as in *NicSand*, Valassis alleges only that NAM offers *incentives* to persuade retailers and CPGs to contract with NAM rather than its rivals.  *See* 507 F.3d at 448.  In the case of retailers, these incentives allegedly include higher upfront cash "guarantees."  (¶¶ 106–115.)  In the case of CPGs, they include lower prices and discounts.  (¶¶ 187–192.)  In both cases, the crux of Valassis's claim is that NAM engages in *price competition* to increase its business and to gain an advantage over its competitors.  That is not anticompetitive as a matter of law.  *See NicSand*, 507 F.3d at 452.

*ZF Meritor*, by contrast, involved allegations of coercion not present here. There, the plaintiff "alleged that [defendant] Eaton used its position as a supplier of *necessary products* to persuade OEMs to enter into agreements imposing *de facto* purchase requirements of roughly 90% for at least five years."  696 F.3d at 277 (emphasis added).  If the original equipment manufacturers (OEMs) failed to accept or meet those requirements, Eaton threatened them with cancellation of their contracts and a refusal to supply Eaton products in the future.  *Id.* at 277–78. And, for OEMs, "losing Eaton as a supplier was not an option" because they

13

needed to stock Eaton's transmissions in order to meet demand from *their* customers (truck buyers). *Id.* at 278. Thus, Eaton's "position as a supplier of necessary products," *id.* at 277, gave it the ability to compel OEM customers to enter into *de facto* exclusive deals. *See id.* at 283.

Valassis has failed to allege any similar facts about NAM's market position. To the contrary, Valassis's own allegations are that it serves as the "exclusive ISP provider" to at least some major retailers who, by implication, have freely chosen *not* to buy from NAM. (¶ 202.) Valassis's bare assertion that NAM "compels" them to enter into such agreements thus is not plausible. *See Pro Search Plus, LLC v. VFM Leonardo, Inc.*, No. 12-cv-2102, 2013 WL 3936394, at *4 (C.D. Cal. July 30, 2013) (allegations that defendant "successfully . . . coerced actual and potential purchasers" are "patent legal conclusions that are not entitled to a presumption of truth and do not support [the plaintiff's] claims"). Likewise, Valassis's own allegations make clear that NAM's right-of-first-refusal agreements with CPGs are not an "all-or-nothing" proposition; to the contrary, CPGs that do not wish to enter into a right-of-first refusal agreement are free to choose not to do business with NAM or not to do business with NAM on an "exclusive" basis. (¶¶ 165, 181.)[8]

---

[8]   *Du Pont* did not address whether customers who entered into long-term supply agreements with the defendant chose to enter such agreements voluntarily, were offered discounts in exchange for entering into the agreements, or had the option to continue doing business with the defendant if they did not enter into the challenged contracts. *See* 637 F.3d at 452-53. But, to the extent that the

**_Second_**, Valassis's pejorative characterization of discounts as a "financial penalty" on CPGs that choose not to contract with NAM does not establish exclusive dealing. (Opp'n 20.) *ZF Meritor* does not hold to the contrary.

In that case the Third Circuit embraced the proposition that above-cost discounts are *not* anticompetitive, regardless of how they are characterized. To the contrary, the court acknowledged a long line of Supreme Court cases holding that "'[l]ow prices benefit consumers regardless of how those prices are set,'" and that "'so long as they are above predatory levels [*i.e.*, above cost], they do not threaten competition.'" 696 F.3d at 272 (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993)). Citing *NicSand*, the court noted that "[t]hese principles extend to above-cost discounting or rebate programs, which condition the discounts or rebates on the customer's purchasing of a specified volume or a specified percentage of its requirements from the seller." *Id.* at 275; *see NicSand*, 507 F.3d at 451–52.

---

Fourth Circuit's decision could be read to suggest that offering customers the *option* of entering into an exclusive supply agreement in exchange for a lower price constitutes anticompetitive conduct, it is contradicted by established Sixth Circuit law. *See NicSand*, 507 F.3d at 452 ("That 3M offered greater discounts . . . to win the retailers' business does not offend the antitrust laws"); *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 975, 979 (6th Cir. 2000) (plaintiff failed to allege how defendant's exclusive contracts "have injured competition, especially in light of the discounted rates offered to the customers . . . .").

15

The fact that a plaintiff, like Valassis, applies the label "exclusive" or "penalty" to such programs does not change the conclusion. *See ZF Meritor*, 696 F.3d at 275 ("[A] plaintiff's characterization of its claim as an exclusive dealing claim does not take the price-cost test off the table."). Rather, the court observed:

> [W]hen price is the clearly predominant mechanism of exclusion, the price-cost test tells us that, so long as the price is above-cost, the procompetitive justifications for, and the benefits of, lowering prices far outweigh any potential anticompetitive effects.

*Id.* (citation omitted).

Here, "price is the clearly predominant mechanism of exclusion" alleged by Valassis. *Id.* Thus, under *ZF Meritor*, as well as established Sixth Circuit law, Valassis must plead facts showing that the pricing it attacks is below an appropriate measure of NAM's costs. *Id.*; *NicSand*, 507 F.3d at 451–52. Valassis has alleged no such facts with regard to CPGs or retailers. (Mot. 29; *supra* at 10–12.) And, as noted, permitting such deficient claims to proceed past a motion to dismiss is dangerous because they attack the very price competition the antitrust laws are intended to encourage. *See NicSand*, 507 F.3d at 452.

**_Third_**, Valassis contends that NAM's contracts have an anticompetitive effect because they are "long-term." (Opp'n 19, 23.) But the only examples of "long-term" agreements cited in the Complaint are ones that pre-date the release.

Valassis entreats the Court not to dismiss its claims "merely because *two* examples of long-term contracts existed before the parties' settlement." (Opp'n 22

(emphasis in original).)  But the Complaint includes no *other* examples.  Thus, Valassis asks the Court to allow its antitrust case to proceed to discovery based on baseless speculation that NAM *might* have other "long-term" agreements that post-date the settlement.  That is not sufficient.  *Pro Search*, 2013 WL 3936394, at *4 (alleging "only the existence of the exclusivity agreements" is insufficient); *JM Computer Servs., Inc. v. Schlumberger Tech., Inc.*, No. 95-cv-20349, 1996 WL 241607, at *4 (N.D. Cal. May 3, 1996).[9]

Moreover, Valassis has failed to plead any facts showing how multi-year agreements work to the detriment of retailers and/or CPGs.  To the contrary, like the complaint that was dismissed in *NicSand*, Valassis's pleading suggests that CPGs and retailers have been able to extract *more favorable* pricing from NAM by agreeing to multi-year terms.  (¶¶ 165, 339–340.)  *See NicSand*, 507 F.3d at 453–54; *see also Indeck*, 250 F.3d at 975, 979 (affirming dismissal of competitor's exclusive dealing claim despite allegations that the defendant had contracts with a substantial number of customers that made it the "exclusive supplier of power for five to ten years").

---

[9]  *Du Pont* is inapposite.  There, the defendant tried to offer additional evidence of its agreements, outside of the complaint, to show that its contracts were not long-term.  637 F.3d at 449–50.  Here, the absence of legally sufficient allegations as to long-term contracts is apparent from the face of Valassis's Complaint.

17

**_Fourth_**, Valassis argues that NAM's contracts are "even more anticompetitive" than the ones at issue in _Du Pont_ and _ZF Meritor_ because NAM "purposefully staggers its contractual expiration dates for the express purpose of deterring" new ISP competitors.  (Opp'n 19–20.)[10]

But, assuming Valassis's allegations that nearly two-thirds of NAM's retailer contracts do not expire in a given year are true (¶ 126), it follows that in the same year _more than one-third_ of all retailers _are_ able to contract with NAM's competitors.  In that case, in the four years since Valassis began offering ISP, Valassis has had the opportunity to compete for agreements with _all_ of the retailers who do business with NAM.  Thus, the Complaint contains no facts that could plausibly support the assertion that the staggering of contract terms has prevented Valassis from being able to "build a sufficiently large network of retailers to be a viable competitor" to NAM.  (Opp'n 20.)

**_Finally_**, Valassis tries to distinguish _NicSand_ by suggesting that the Court's holding there was limited to a situation in which the plaintiff was a "former market leader that had been unseated by a competitor."  (Opp'n 23–24.)  But the _NicSand_ Court itself stated that "[a]ny doubt about the appropriate resolution of this case

---

[10]  As Valassis now admits, the only basis for its assertion about "staggering" of contracts is a statement made by a NAM executive <u>in 2004</u>.  (Opp'n 5 n.2.) That statement was the subject of a claim Valassis asserted in its prior lawsuit against NAM.  (_See_ Mot. 8.)  Any claim Valassis now seeks to assert based on the same statement plainly was released.  _See supra_ 2–6.

can be laid to rest by" its prior decision in *Indeck*, where the defendant "did *not* unseat the dominant market leader (as 3M did) but instead hindered a potential market entrant." *NicSand*, 507 F.3d at 455 (emphasis added); *see Indeck*, 250 F.3d at 975. Thus, Valassis's contention that it "has never been the market leader in the ISP market" (Opp'n 24) is irrelevant. It is undisputed that Valassis is a viable competitor. From there, the marketplace, not the legal system, is supposed to determine the market leader.

## V. VALASSIS HAS FAILED TO STATE A CLAIM FOR MONOPOLIZATION BASED ON TORTIOUS CONDUCT

Valassis argues that NAM's supposed "tricks and misrepresentations"—two instances in which NAM purportedly removed ISPs from retail stores, and an alleged misrepresentation about the size of NAM's retail network—are "precisely the type of tortious conduct the Sixth Circuit recognized as anticompetitive in *Conwood*." (Opp'n 30.) That is not so. In *Conwood*, the plaintiff demonstrated that defendant's sales representatives "would routinely discard hundreds of thousands of Conwood racks." *Conwood Co.* v. *U.S. Tobacco Co.*, 290 F.3d 768, 778 (6th Cir. 2002). At trial, plaintiff showed that it spent as much as $100,000 per month replacing tortiously destroyed racks and that "about 50 percent of [plaintiff's] sales representative's staff time was spent repairing racks destroyed by [defendant]." *Id.* Plaintiff also proved that defendant deliberately and repeatedly provided false sales and other data to retailers. *Id.* at 776–77. *Conwood*

19

nevertheless reaffirmed that "[b]usiness torts will be violative of § 2 only in *rare gross cases.*" *Id.* at 784, 788 (emphasis added) (internal quotations omitted).

This is not such a case. The Complaint's reference to *two* isolated instances of ISP removals does not compare to the "hundreds of thousands" of rack removals in *Conwood.* (¶¶ 199–200.) Crucially, Valassis has failed to allege facts showing that any of NAM's supposed tortious conduct had a significant impact on Valassis's own business, much less on *competition itself* in any relevant market. Nor does Valassis allege, as it must, that NAM's purported misrepresentation was "so difficult for [Valassis] to counter that it could potentially exclude competition." *Am. Council of Certified Podiatric Physicians and Surgeons* v. *Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 372 (6th Cir. 2003).

## VI.   THE ATTEMPTED MONOPOLIZATION CLAIM FAILS

Valassis argues that its attempt claim should not be *presumed* implausible. (Opp'n 34–35.) That is a red herring. Valassis alleges that even though NAM has been engaged in the challenged conduct **_since 2000_**, Valassis has remained in the market for more than a decade with a stable 35% share. (¶¶ 232–235.) NAM, meanwhile, has gained no incremental market share for the past eight years. (*Id.*) These are just the circumstances in which an attempt claim should be deemed presumptively implausible. (Mot. 39 (citing 3B Areeda & Hovenkamp ¶ 807f).)

20

But, presumption or not, Valassis has failed to plead a *plausible* claim of attempted monopolization because it has failed to allege facts showing a "dangerous probability" that NAM will succeed in monopolizing the alleged FSI market.  Valassis contends that NAM's alleged 65% market share, "in combination with other facts," is "enough to infer" a dangerous probability.  (Opp'n 33.)  Yet it fails to identify what those "other facts" are, and none are found in the Complaint. The conclusory assertion of market share does not support an inference that NAM will acquire a monopoly over FSI products—especially where NAM is alleged to have engaged in the challenged conduct for so long without any measurable increase in share and without achieving monopoly.  *See Richter Concrete Corp.* v. *Hilltop Concrete Corp.*, 691 F.2d 818, 826 (6th Cir. 1982) ("Market share alone . . . is not enough to determine a firm's capacity to achieve monopoly.").

Valassis cites *In re Pool Products Distribution Market Antitrust Litigation*, 940 F. Supp. 2d 367 (E.D. La. 2013), but that case only illustrates why Valassis's own pleading is insufficient.  There, the court held that a "market share of 33 percent can be sufficient to establish a dangerous probability of monopolization when ***other market factors are present*** . . . ."  *Id.* at 385 (emphasis added).  Among those other market factors were that the defendant's "market share has been increasing" (unlike NAM's), that the defendant was the *only* national distributor of the relevant products (unlike NAM), and that the defendant had grown to more

21

than four times the size of its next largest competitor (unlike NAM).  *Id.* at 386–87.

Valassis has failed to allege any comparable facts.[11]

## VII.   VALASSIS HAS FAILED TO PLEAD ANTITRUST INJURY

That Valassis has not sold as many FSI or ISP products as it would like, due to competition from NAM, is not an antitrust injury.  *See NicSand*, 507 F.3d at 450 ("[O]ne competitor may not use the antitrust laws to sue a rival merely for vigorous or intensified competition."); *CBC Cos., Inc.* v. *Equifax, Inc.*, 561 F.3d 569, 571–72 (6th Cir. 2009).  Valassis does not even attempt to defend its bare-bones assertion that NAM's conduct harms *consumers* of CPG's products. (¶¶ 323–324; *see* Mot. 44.)  Nor does Valassis try to defend its absurd assertion that NAM caused harm to retailers by paying them cash guarantees that were too "high."  (¶¶ 293–303; *see* Mot. 41–42.)

Valassis is left arguing two forms of injury that purportedly confer antitrust standing.  Neither is sufficient under Sixth Circuit precedent.

---

[11]   Valassis also contends that the question of dangerous probability should not be resolved at the pleading stage.  (Opp'n 33.)  But courts routinely do just that. *See, e.g.*, *Surface Supplied, Inc.* v. *Kirby Morgan Dive Sys., Inc.*, No. 13-cv-0575, 2013 WL 5496961, at *6 (N.D. Cal. Oct. 3, 2013) (dismissing claim where allegations of dangerous probability were "nothing more than 'labels and conclusions'"); *Bookhouse of Stuyvesant Plaza, Inc.* v. *Amazon.com, Inc.*, No. 13-cv-1111, 2013 WL 6311202, at *8 (S.D.N.Y. Dec. 5, 2013) (same); *Barry Fiala, Inc.* v. *Arthur Blank & Co., Inc.*, No. 02-cv-2282, 2003 WL 22309442, at *7 (W.D. Tenn. Feb. 19, 2003) (dismissing counterclaim for failure to "assert a realistic possibility that Plaintiff could achieve monopoly power").

___**First**___, Valassis contends that NAM coerces CPGs who would prefer to buy their FSI products from Valassis to buy them from NAM *or* NAM charges predatorily low prices for its FSI products.  (Opp'n 44–45.)  This supposedly "reduces choice for CPGs" and "has increased Valassis' operating costs or caused it to lose FSI business."  (*Id.* 45.)  But that argument fails because Valassis has failed to allege sufficient facts to state a predatory pricing claim.  *Supra* 10–12.  Absent such a claim, the most Valassis can allege is that NAM won additional CPG business by competing on price.  Any losses to Valassis that flowed from such competition "'cannot be said to stem from an *anticompetitive* aspect of [NAM's] conduct.'"  *NicSand*, 507 F.3d at 452 (quoting *Atl. Richfield Co.* v. *USA Petroleum Co.*, 495 U.S. 328, 340–41 (1990)) (emphasis in original).[12]

___**Second**___, Valassis argues that NAM's agreements with retailers have prevented competitors from "gaining a critical mass of retailers necessary to compete for sales of ISPs to CPGs."  (Opp'n 45.)  But, as noted, Valassis's own allegations establish that during the past four years Valassis has had the opportunity to compete for contracts with *all* of the retailers with whom NAM does business.  *Supra* at 18.  That NAM has been more successful in that competition

---

[12]  The Complaint also contains no facts to establish that NAM caused Valassis to incur increased "operating costs."  Valassis cites its own naked assertion that "News' strategies have increased Valassis' costs to operate in the FSI and ISP markets."  (¶ 326.)  But, "the Supreme Court requires more than 'naked assertion[s]' to establish antitrust standing."  *CBC*, 561 F.3d at 572.

than Valassis is not a concern of the antitrust laws, which "do not require the court to protect small businesses from the loss of profits due to continued competition." *Cargill, Inc.* v. *Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986).

## VIII.  ANY SURVIVING CLAIMS SHOULD BE REFERRED TO THE ANTITRUST EXPERT PANEL, OR STAYED

If Valassis has any viable post-settlement bundling and tying claims, those claims must be referred to the Antitrust Expert Panel in the first instance.  *See supra* 6–8.  If any of Valassis's other claims survive, those claims also should be referred to the Panel, or else stayed pending the Panel's determination of the bundling and tying claims.  The whole point of establishing a panel of antitrust special masters was to provide a resource to assist and advise the Court in efficiently resolving disputes involving complex issues of antitrust law.  Yet, now, Valassis seeks to deprive the Court (and NAM) of that resource by arguing that the Panel should have *no role* in resolving this action.  That argument is baseless.

Valassis contends that the "Panel's conclusion as to bundling and tying will have no impact" on the disposition of its other claims.  (Opp'n 44 n.14.)  But that is not so. The bundling and tying claims are based on many of the same allegations and have substantive elements in common with the rest of Valassis's antitrust claims—for example, market definition and purported market power.  (*See* Mot. 13–15.)  It therefore would be wasteful and inefficient for the Court to adjudicate Valassis's other antitrust claims while the Panel considers bundling and tying.

24

## IX.   VALASSIS SHOULD NOT BE GRANTED LEAVE TO AMEND

Valassis's "alternative" request for leave to amend its Complaint should be denied.  Valassis's claims are barred by the release and the agreement to refer bundling and tying claims to the Antitrust Expert Panel.  No amendment of the pleading can alter the effect of those agreements.  If Valassis was aware of any actionable, post-release facts it would have pled them, or at the very least identified them in its opposition to the motion to dismiss.  It has done neither.  And, if Valassis has any factual basis to assert a claim that NAM has engaged in unlawful bundling and tying, it can bring that claim before the Antitrust Expert Panel.

## CONCLUSION

NAM requests that the Court dismiss Valassis's Complaint with prejudice.

Dated:  March 14, 2014

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

BUTZEL LONG
*a professional corporation*

**Kenneth A. Gallo (N.Y. Bar No. 430369)**
**Andrew C. Finch (N.Y. Bar No. 4435913)**
**William B. Michael (N.Y. Bar No. 4296356)**
**Jane B. O'Brien (N.Y. Bar No. 4484457)**
2001 K Street, NW
Washington, D.C. 20006-1047
(202) 223-7300
kgallo@paulweiss.com
afinch@paulweiss.com
wmichael@paulweiss.com
jobrien@paulweiss.com
*Co-Counsel for Defendants*

By:*/s/ David F. DuMouchel*
   **David F. DuMouchel (P25658)**
   **Joseph E. Richotte (P70902)**
   **Robin Luce Herrmann (P46880)**
150 West Jefferson Avenue, Ste. 100
Detroit, Michigan 48226
(313) 225-7000
dumouchd@butzel.com
richotte@butzel.com
herrmann@butzel.com
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

*/s/ David F. DuMouchel*
David F. DuMouchel (P25658)
