UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALASSIS COMMUNICATIONS, INC.,

        Plaintiff,

    v.

NEWS CORPORATION; NEWS AMERICA
MARKETING, a/k/a NEWS AMERICA, INC.,
a/k/a NEWS AMERICA MARKETING GROUP;
NEWS AMERICA MARKETING FSI, LLC, a/k/a
NEWS AMERICA MARKETING FSI, INC.; and
NEWS AMERICA MARKETING IN-STORE
SERVICES, LLC, a/k/a NEWS AMERICA
MARKETING IN-STORE SERVICES, INC.,

        Defendants.

CASE NO. 2:13-CV-14654
JUDGE ARTHUR J. TARNOW
MAGISTRATE JUDGE PAUL KOMIVES

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (docket #22)

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.    *Procedural Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        2.    *The Settlement and Panel Agreements* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        3.    *Governing Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        4.    *The Tying and Bundling Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        5.    *The Remaining Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\*     \*     \*     \*     \*

I.     **RECOMMENDATION:** The Court should grant in part the NAM defendants' motion to

dismiss. Specifically, the Court should conclude that Valassis's tying and bundling claims are

barred by the Settlement and Panel Agreements in *Valassis I*, and that any relief with respect to these

claims must be pursued in *Valassis I* pursuant to the Panel Agreement and the Court's Panel Order

in that case. Accordingly, the Court should grant defendants' motion to dismiss these claims, without prejudice to Valassis seeking any appropriate relief with respect to these claims in *Valassis I*. If the Court accepts this recommendation, the Court should also stay the proceedings in this case on Valassis's remaining claims pending resolution of the tying and bundling claims in *Valassis I*.

II.   REPORT:

A.   *Background*

Plaintiff Valassis Communications, Inc. ("Valassis"), and defendants News America Marketing, Inc., News America Marketing FSI, LLC, and News America Marketing In-Store Services, LLC, subsidiaries of defendant News Corporation (collective "NAM"), compete in the market providing in-store promotions ("ISP") and free-standing inserts ("FSI"). "ISPs are products that place messages promoting the products of consumer packaged goods manufacturers ("CPGs") in the aisle space of major supermarket, grocery, drug, and mass merchant chain stores. . . . Examples of ISPs include shelf coupon dispensers, shelf advertising, floor advertising, and shopping cart advertisements." Compl., ¶ 2. "FSIs are booklets of coupons which are delivered directly to consumers' homes containing primarily coupons for products manufactured by CPGs." *Id*., ¶ 3. In 2006, Valassis filed suit against NAM in this Court, *see Valassis Communications, Inc. v. News America Marketing, Inc.*, No. 06-10240 (E.D. Mich.) (*Valassis I*), alleging that NAM had violated the Sherman Antitrust Act by using its market power to illegally bundle sales of FSIs and ISPs. Valassis also asserted several state law claims, and filed a separate suit in California state court. The Court remanded Valassis's state law claims to the Wayne County Circuit Court. Following a jury trial, Valassis prevailed on its state law claims, and the jury awarded damages in excess of $300 million. While NAM's appeal was pending in the Michigan Court of Appeals, the parties entered

2

into a settlement agreement providing for the payment of $500 million to Valassis, a 10 year shared mail distribution agreement, and a procedure for resolving future claims by an independent panel.

On November 8, 2013, Valassis commenced this action, again asserting various antitrust violations.[1]   Specifically, Valassis asserts claims of: (1) monopolization of the ISP market in violation of section 2 of the Sherman Act, 15 U.S.C. § 2; (2) predatory pricing in the ISP market with respect to retailers, in violation of section 2 of the Sherman Act, 15 U.S.C. § 2; (3) attempted monopolization of the FSI market in violation of section 2 of the Sherman Act, 15 U.S.C. § 2; (4) exclusive dealing in the ISP market with respect to both retailers and CPGs, in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and section 3 of the Clayton Act, 15 U.S.C. § 14; (5) exclusive dealing in the FSI market with respect to CPGs, in violation of sections 1 and 2 of the Sherman Act and section 3 of the Clayton Act (6) bundling in violation of sections 1 and 2 of the Sherman Act and section 3 of the Clayton Act; and (7) tying in violation of sections 1 and 2 of the Sherman Act and section 3 of the Clayton Act.  Valassis also asserts state law claims under the Michigan Antitrust Reform Act, MICH. COMP. LAWS §§ 445.772-.773; California's Cartwright Act, CAL. BUS. & PROF. CODE §§ 16720, 16726, 16727; and the California Unfair Trade Practices Act, CAL. BUS. & PROF. CODE §§ 17043, 17044, 17070, 17071, as well as state common law claims of unfair competition, tortious interference with contracts, and tortious interference with business relationships or expectancies.  The matter is currently before the Court on NAM's motion to dismiss, filed on December 19, 2013.  NAM argues that all claims arising out of pre-settlement conduct are

---

[1]Valassis also filed a motion for discovery in the prior action at the same time.  I granted that motion, and the Court overruled NAM's objections to that Order.  In response to Valassis's motion for discovery in the prior action and its filing of this action, NAM also filed in the prior case a motion to enforce the settlement agreement.  The Court denied that motion, concluding that the issues raised by NAM are more properly examined in connection with this motion to dismiss.

barred by the settlement agreement, that Valassis's bundling and tying claims are barred by the settlement agreement, and that the remaining claims should be dismissed or stayed pending resolution of the bundling and tying claims by the panel pursuant to the settlement agreement. With respect to the merits, NAM argues that Valassis's antitrust claims fail to state a claim upon which relief may be granted because Valassis has failed to sufficiently allege: (1) anticompetitive conduct; (2) intent to monopolize or a dangerous probability of monopolization; (3) antitrust injury; and (4) facts supporting its bundling and tying claims. NAM also argues that the Court should either dismiss or decline to exercise supplemental jurisdiction over Valassis's state law claims. Plaintiff filed a response to the motion on February 14, 2014, and NAM filed a reply on March 14, 2014.

B.    *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6). In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim. *Id*. at 47. Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47. However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations,"

but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 566 U.S. 662, 677-79 (2009) (parallel citations omitted).

C.    *Discussion*

As noted above, the prior litigation between the parties resulted in a settlement agreement.

NAM contends that the bulk of Valassis's claims are barred by that agreement, and that the remaining claims should be dismissed or stayed pending resolution of Valassis's tying and bundling claims pursuant to the procedure set forth in the settlement agreement.  For the reasons that follow, the Court should conclude that Valassis's bundling and tying claims are precluded by the Panel Agreement, and that any relief Valassis seeks on these claims must be pursued through the procedures established by the Panel Agreement and the Court's related Order in *Valassis I*.  The Court should also conclude that it is appropriate to stay the proceedings on Valassis's other claims in this case pending the completion of that procedure.

      1.    *Procedural Matters*

Before addressing the substance of the parties' arguments regarding the settlement agreement, it is necessary to address to procedural objections raised by Valassis to NAM's reliance on the Settlement and Panel agreements.  First, Valassis argues that because the Settlement Agreement is not part of its complaint, it cannot be considered on a motion to dismiss under Rule 12(b)(6).  Second, Valassis argues that release is an affirmative defense that it is not required to plead around to avoid dismissal under Rule 12(b)(6).  The Court should reject each of these arguments.

Valassis is correct that, ordinarily, a court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56.  *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  However, Rule 10 provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."  FED. R. CIV. P. 10(c).  Thus, the Court may consider the exhibits attached

to plaintiff's complaint in deciding whether the complaint states a claim upon which relief may be granted. *See Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (in deciding a motion to dismiss, the court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."); *Realtek Indus., Inc. v. Nomura Secs.*, 939 F. Supp. 572, 575 n.1 (N.D. Ohio 1996). Further, "[a] court may consider a document that is not formally incorporated by reference or attached to a complaint if the document is referred to in the complaint and is central to the plaintiff's claim" without converting the motion to dismiss into one for summary judgment. *Welch v. Decision One*, No. 12-10045, 2012 WL 4008730, at *2 (June 25, 2012) (Randon, M.J.) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)), *magistrate judge's report adopted*, 2012 WL 4020976 (E.D. Mich. Sept. 12, 2012) (Rosen, J.); *see also*, *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008). The Settlement Agreement, although not attached to Valassis's complaint, is referenced throughout the Complaint. Thus, "the Court may . . . consider the Settlement Agreement as part of the pending Motion without converting it into a motion for summary judgment." *Sunday's Child, LLC v. Irongate Azrep BW LLC*, No. 13-00502, 2014 WL 688582, at *1 n.1 (D. Hawai'i Feb. 4, 2014) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Inlandboatmens Union of Pac. v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002)); *see also*, *Presley v. Graham*, 936 F. Supp. 2d 1316, 1320 n.2 (M.D. Ala. 2013); *SV Intern., Inc. v. Fu Jian Quanyu Indus. Co., Ltd.*, 820 F. Supp. 2d 677, 682 n.2 (M.D.N.C. 2011); *The Cuneo Law Group, P.C. v. Joseph*, 669 F. Supp. 2d 99, 118 (D.D.C. 2009), *aff'd*, 428 Fed. Appx. 6 (D.C. Cir. 2011). Further, a court may consider facts susceptible to judicial notice without converting a motion to dismiss into one for summary judgment. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004); *New*

*England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). "Settlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement." *Deylii v. Novartis Pharm. Copr.*, No. 13-cv-06669, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (citing cases); *see also*, *Prestone Prods. Corp. v. South/Win, Ltd.*, No. 13 C 1853, 2013 WL 5164024, at *2 n.1 (N.D. Ill. Sept. 13, 2013) (citing cases).

Valassis also argues that it is inappropriate to grant dismissal under Rule 12(b)(6) on the basis of the settlement agreement because release is an affirmative defense. Valassis is correct that release is an affirmative defense. *See* FED. R. CIV. P. 8(c)(1). Valassis is incorrect, however, that this precludes dismissal under Rule 12(b)(6). "In an appropriate case, an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003); In particular, dismissal on the basis of an affirmative defense is appropriate where "the facts that establish the defense [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice," and "the facts so gleaned . . . conclusively establish the affirmative defense." *Colonial Mortgage*, 324 F.3d at 16; *see also*, *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). Thus, where a settlement agreement is properly considered on a motion to dismiss and shows that the claims are barred, the matter may be resolved under Rule 12(b)(6) notwithstanding that release is an affirmative defense. *See Citibank Global Markets, Inc. v. Rodriguez Santana*, 573 F.3d 17, 23-28 (1st Cir. 2009); *WSP USA Corp. v. Marinello*, No. 13 Civ. 4591, 2013 WL 6704885, at *3 (S.D.N.Y. Dec. 19, 2013);

*Superior Care Pharmacy Inc. v. Medicine Shoppe Int'l, Inc.*, No. 2:10-cv-207, 2011 WL 597065, at *13 (S.D. Ohio Feb. 10, 2011); *Rock v. Voshell*, 397 F. Supp. 2d 616, 626 (E.D. Pa. 2005). Accordingly, the Court should reject Valassis' procedural arguments against dismissal.

2.       *The Settlement and Panel Agreements*

As relevant here, the Settlement Agreement provides that Valassis

> hereby releases, remises, acquits, forever discharges and covenants not to sue Defendants or any of their past or present members, related or affiliated companies and any or all of their respective officers, directors, shareholders, partners, servants, employees, members, attorneys, accountants, agents, representatives, affiliates, subsidiaries, parents, successors and assigns, whether in their individual capacity or as principal or agent, from any and all manner of actions and causes of action, suits, debts, obligations, contracts, torts, covenants, claims, rights of contribution and/or indemnification, rights of subrogation, sums of money, judgments, executions, liabilities, damages, interest, costs, expenses, attorneys' fees and legal costs, demands and rights whatsoever, contingent or noncontingent, in law or in equity, known or unknown, of any kind or character, in each case relating to any claim, allegation or cause of action that was or could have been asserted in the Litigation (collectively "Claims"), arising from or based on any claims, allegations, actions, inaction, conduct or facts of any kind existing up to the date of this Agreement.

Def.'s Br., Ex. 2, ¶ 6 [hereinafter "Settlement Agreement"].   In a separate document, titled "Agreement Regarding Antitrust Panel and Assessment of Certain Future Business Practices," the parties agreed "that a three member expert antitrust panel will be appointed to assess the Parties' future business practices relating to bundling and tying under the antitrust laws."   *Id.*, Ex. 3 [hereinafter "Panel Agreement"].   The Panel agreement further provided that the parties would "submit to the panel their proposal setting forth the agreed-upon and disputed provisions regarding the assessment of such future business practices in the form of Exhibit A hereto," *id.*, and that the parties thereby "waive[d] their right to a trial by jury in any proceedings relating to such future business practices.   The Parties' exclusive remedy in the event of violations of allegedly unlawful bundling and tying shall be determined by the expert panel and ultimately by Judge Tarnow

9

consistent with Exhibit A hereto." *Id.* Exhibit A, in turn provided the parties various definitions of prohibited conduct, as well as various agreed-upon provisions. After appointing the members of the panel to serve as Special Masters and receiving the panel's report and recommendation, the Court entered an Order providing for the analysis of future bundling and tying claims. *See id.*, Ex. 6 [herinafter "*Valassis I* Panel Order"].

      3.    *Governing Law*

As a general matter, "because settlement agreements are contracts, issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013) (internal quotation omitted); *see also*, *Magallanes v. Illinois Bell Telephone Co.*, 535 F.3d 582, 584 (7th Cir. 2008); *Maya Swimwear Corp. v. Maya Swimwear, LLC*, 855 F. Supp. 2d 229, 234 (D. Del. 2012). There appears to be some dispute, however, as to the applicability of this rule to settlements of federal claims, some courts holding that the general rule applies "even when there are federal causes of action in the underlying litigation," *Taylor F. ex rel. Jon F. v. Arapahoe County Sch. Dist. 5*, 954 F. Supp. 2d 1197, 1202 (D. Colo. 2013) (internal quotation omitted), with others holding that "[f]ederal common law controls the interpretation of a release of federal claims." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).[2] The Court need not resolve this issue, however, as the Settlement Agreement expressly provides that it "shall be governed and construed in accordance with the laws of the State of Michigan." Settlement Agreement, ¶ 11. *See generally*, *In re Dow Corning Corp.*, 419 F.3d 543, 548 (6th Cir. 2005) (applying settlement agreement's

---

    [2]I have found no Sixth Circuit case addressing this issue, and the parties do not discuss the choice of law issue.

choice of law provision).  Under Michigan law, "[a]n agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Corp. v. Walcon Corp.*, 207 Mich. App. 566, 571, 525 N.W.2d 489, 491 (1994).  "In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 480 Mich. 19, 24, 745 N.W.2d 754, 757-58 (2008) (footnotes omitted).  "A contract is ambiguous [only] if 'its words may reasonably be understood in different ways.'" *UAW-GM Human Resources Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 491, 579 N.W.2d 411, 414 (1998) (quoting *Raska v. Farm Bureau Ins. Co.*, 412 Mich. 355, 362, 314 N.W.2d 440, 441 (1982)). However, "[i]f the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous."  *Wells Fargo Bank, NA v. Cherryland Mall Ltd. Partnership*, 295 Mich. App. 99, 111, 812 N.W.2d 799, 807 (2011).  "The initial question whether contract language is ambiguous is a question of law."  *Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 323, 550 N.W.2d 228, 237 (1996).  Only if the court determines that the contract is ambiguous does the question of the intent of the parties become a question of fact, subject to proof by extrinsic evidence and resolution by the trier of fact.  *See UAW-GM Human Resources Ctr.*, 228 Mich. App. at 491-92, 579 N.W.2d at 414.

    4.    *The Tying and Bundling Claims*

    Based on the language of the contract, there can be no doubt that Valassis's tying and bundling claims are subject to the Panel Agreement, and are therefore not appropriately brought in

this case.  The Panel Agreement provides for the appointment of "a three member expert antitrust panel . . . to assess the Parties' future business practices relating to bundling and tying under the antitrust laws."  Panel Agreement, para. 2.  There is no dispute that Valassis's tying and bundling claims relate to "future business practices relating to bundling and tying;" indeed, in its Complaint Valassis alleges that NAM's conduct violates the terms of the *Valassis I* Panel Order, and notes that it is pleading its tying and bundling claims in this case in the alternative to relief it is seeking in *Valassis I*.  *See* Compl., ¶¶ 418-20, 437-40.  Nor can there be any doubt that Valassis's sole avenue for relief on these allegations is through the Panel created by the Court's Panel Order in *Valassis I*. The Panel Agreement entered into by the parties provides that the parties "waive their right to a trial by jury in any proceedings relating to such future business practices [relating to bundling and tying" and that "[t]he Parties' *exclusive remedy* in the event of violations of allegedly unlawful bundling and tying shall be determined by the expert panel and ultimately by Judge Tarnow consistent with Exhibit A hereto."  Panel Agreement, para. 5 (emphasis added).  "[T]he word 'exclusive' is far from ambiguous[.]" *Young v. Derwinski*, 1 Vet. App. 70, 72 (Ct. Vet. App. 1991); *see also*, *In re Marriage of Medill*, 40 P.3d 1087, 1093 (Or. Ct. App. 2002) ("The word 'exclusive' is not ambiguous.").  Exclusive means "single, sole," MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/exclusive (def. 4), "excluding all but what is specified."  OXFORD ENGLISH DICTIONARY ONLINE, http://www.oed.com/view/Entry/65833?redirectedFrom=exclusive#eid  (def. A.II); *see also*, *Marshall v. Hill*, No. 261115, 2006 WL 2708620, at *2 (Mich. Ct. App. Sept. 21, 2006) (per curiam); *State v. Woods*, 645 S.W.2d 745, 746 (Mo. Ct. App. 1983).  *See generally*, *McGrath v. Allstate Ins. Co.*, 290 Mich. App. 434, 439, 802 N.W.2d 619, 622 (2010) (citing *Citizens Ins. Co.*

*v. Pro-Seal Serv. Group Inc.*, 477 Mich. 75, 84-85, 730 N.W.2d 682, 687 (2007)) (plain meaning of words used in contract "may be determined by consulting dictionaries.").

Thus, by its plain terms the Panel Agreement provides that the mechanism established by the Panel Order is the single, sole means for remedying any allegations of future bundling or tying by the parties, excluding all other forms of relief.  To read the phrase to permit Valassis to bring its bundling and tying claims in a separate action would read the word "exclusive" out of the agreement.  This the Court may not do.  *See Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 468, 663 N.W.2d 447, 453 (2003) ("[C]ourts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory."); *Smith v. Smith*, 292 Mich. App. 699, 702, 823 N.W.2d 114, 116 (2011) ("[E]ach word of the contract must be given effect, if possible.").  Attempting to overcome this plain language, Valassis argues that the Court's Panel Order gives it the option to seek relief under the Order or through other means, such as a separate lawsuit.  The portion of the Panel Order upon which Valassis relies does not support this conclusion.  The provision cited by Valassis states only that "[i]f either party believes that the other party has violated any provision of this Order, it may, but is not required to, seek relief from the District Court by way of motion for further injunctive relief, contempt, or otherwise."  Panel Order, ¶ 3.  This provision merely states that a party may choose to decline to seek relief in the event of a violation of the Order; it does not suggest that it may also pursue other forms of relief.

In short, the parties agreed in *Valassis I* that their future conduct as it relates to bundling and tying would be judged solely under the Panel Order, as recommended by the Panel and adopted by the Court, within the *Valassis I* case.  Thus, Valassis may not independently pursue its tying and

13

bundling claims in this separate action, and the Court should therefore dismiss those claims from this case, without prejudice to Valassis seeking appropriate relief in *Valassis I*.[3]

     5.    *The Remaining Claims*

NAM argues that "Valassis's other antitrust claims are all either based on its allegations of bundling and tying or have substantive elements in common with those claims," Def.s' Br., at 13, and thus that the Court should dismiss all of the antitrust claims. The Court should reject this argument. NAM has cited, and I have found, no cases suggesting that a court may dismiss claims that are related to claims that are barred by a contract, but which are not themselves barred. By its plain language, the Panel Agreement requires any future business practices relating to tying and bundling to be judged under the Panel Agreement and Panel Order. It does not require the submission of any and all antitrust claims between the parties. Thus, there is no basis on which to dismiss these claims.

Nevertheless, NAM's argument that the Court should stay these claims pending the resolution of the tying and bundling claims under the *Valassis I* Panel Agreement and Panel Order is well taken. As Justice Cardozo noted, writing for the Court in *Landis v. North American Co.*, 299 U.S. 248 (1936), the power to stay is

> incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh

---

[3] Valassis argues that the Panel Agreement does not apply to its tying and bundling claims against News Corp. because News Corp. was not a party to *Valassis I*. NAM responds that the complaint contains no allegations against News Corp. that are distinct from the allegations against the other defendants, and relying on contractual arbitration cases argues that "Valassis may not accomplish an end run around its waiver . . . by naming the corporate parent, News Corporation, as a defendant." Def.'s Br., at 13. In light of my further recommendation that the Court stay proceedings on the remaining claims in this case, the Court need not resolve at this time the extent to which the Panel Agreement applies to Valassis's claims against News Corp.

competing interests and maintain an even balance.

*Id*. at 254-55; *see also, United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812) ("Certain implied powers must necessarily result to our Courts of justice from the nature of their institution."); *Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 656 (7th Cir. 1989) (en banc) (district courts have "'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."). Here, the Court should exercise its inherent power and stay the remaining claims in this case. Such a course would conserve judicial resources, provide for an orderly resolution of the issues presented, and prevent inconsistent decisions.

Although Valassis presents several antitrust claims apart from its tying and bundling claims, Valassis will have to establish several common elements for each of its claims. For example, regardless of the particular type of antitrust claim brought, Valassis must show antitrust injury–that is, "an injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). In addition, with respect to each of its antitrust claims Valassis will be required to define the relevant product and geographic market and show NAM's economic power in that market. *See, e.g.*, *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 223 F. Supp. 2d 718, 729 (D. Md. 2002); *Lantec, Inc. v. Novell, Inc.*, 146 F. Supp. 2d 1140, 1147 (D. Utah 2001). The Court's resolution of these issues in *Valassis I*, to the extent that they are actually litigated and necessarily decided by the Court, would have collateral estoppel effect in this action, obviating the need to litigate these matters twice. Further, the Court's resolution of the issues involved in *Valassis I* may obviate the need for *any* further proceedings in this case. For example, the Court's resolution of the issues in *Valassis I* may

result in Valassis obtaining all the relief it seeks or to which it is entitled, or may sharpen the issues sufficiently to spur the parties to reach a further settlement.

For these reasons, courts routinely stay proceedings in analogous circumstances. Most notably, in the arbitration context courts often stay proceedings on claims not subject to arbitration pending resolution of the claims subject to arbitration. *See, e.g.*, *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007) ("In many instances, . . . district courts actually may prefer to stay the balance of the case in the hope that the arbitration might help resolve, or least shed some light on, the issues remaining in federal court."); *American Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir. 1980) ("While it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action."); *Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, 633 F. Supp. 2d 109, 116-17 (S.D.N.Y. 2009); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002) ("[A] say of all issues, and as to all parties, is warranted when questions of fact common to all would be involved in both the litigation and the arbitration."); *Chempower, Inc. v. Robert McAlpine, Ltd.*, 849 F. Supp. 459, 461 (S.D. W. Va. 1994) ("[E]ven where a non-arbitrable count in a complaint is joined with arbitrable claims, the non-arbitrable claims may be stayed pending the outcome of the arbitration."); *Crawford v. West Jersey Health Sys.*, 847 F. Supp. 1232, 1243 (D.N.J. 1994) ("Where significant overlap exists between parties and issues, courts generally stay the entire action pending arbitration."). *See generally*, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left

to the district court . . . as a matter of its discretion to control its docket.").  Given the substantial overlap in issues and the predominance of Valassis's tying and bundling claims, here as in the above arbitration cases "considerations of judicial economy and avoidance of confusion and possible inconsistent results . . . militate in favor of staying the entire action."  *American Home Assurance Co.*, 629 F.2d at 964.  Accordingly, the Court should stay this action pending resolution of the tying and bundling claims in the context of the *Valassis I* litigation.[4]

D.    *Conclusion*

        In view of the foregoing, the Court should conclude that Valassis's tying and bundling claims are barred by the Panel Agreement in *Valassis I*, and that any relief on these claims must be pursued under the Panel Agreement and Panel Order in that case.  Accordingly, the Court should dismiss plaintiff's tying and bundling claims, without prejudice to Valassis seeking appropriate relief with respect to these claims in *Valassis I*.  If the Court accepts this recommendation, the Court should also stay the remaining claims pending completion of any further proceedings with respect to the bundling and tying claims in *Valassis I*.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

        The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505

---

        [4]If the Court accepts this recommendation it need not, and indeed should not, resolve NAM's arguments regarding the scope of the settlement agreement and the sufficiency of Valassis's complaint under Rule 12(b)(6) at this time.  If the Court rejects my recommendation that the entire case should be stayed, I will prepare a supplemental report addressing the remaining issues raised by NAM's motion to dismiss.

(6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 16, 2014                        s/Paul J. Komives
                                            PAUL J. KOMIVES
                                            UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 16, 2014, electronically and/or by U.S. Mail.

                                            s/Michael Williams
                                            Case Manager for the
                                            Honorable Paul J. Komives


18